*The cause stood over to this term, when the motion [*221 ] was argued at much length by Amory and Dexter for the appellant, and Gore and Otis for the appellee. The Court took time for consideration, and their Opinion was afterwards delivered as follows by
Parsons, C. J.
The appellant moves for a new trial in this case on several grounds : That the depositions taken under the first commission ought to have been suppressed, and not read in evidence to the jury; and that the Court did not direct the jury according to law!
To support the first objection, it has been argued that the com mission issued too soon, before the proper parties were before the Court, the appellee not having produced to the judge of probate the paper which he called the original will, which was then in the island of Cuba, but only a copy certified by the consul of the United States in that island; and that the statute authorizes the judge to issue a commission to take depositions to prove a will, only when the original will is offered for probate.
To this it has been replied, that a copy is sufficient to enable the judge to call before him the proper parties, that a will may be offered for probate within the statute, without producing in the first instance the original, and that it would be very inconvenient to send a will several times across the Atlantic to the hazard of its loss.
At common law no testimony of witnesses is admissible, unless they are present and testify viva voce, and may be cross-examined by the adverse party. As this rule, adhered to without exceptions, would sometimes produce injustice by excluding testimony material to the issue, because the witnesses, living without the jurisdiction of the Court, would not voluntarily, and could not be compelled to ap pear, affidavits are admitted in certain cases by our statutes, when taken pursuant to dedimus, or before certain magistrates.
* The power of issuing a dedimus may be exercised by [ * 222 ] the Probate Court in proper cases, by virtue of the statute of 1783, c. 46., which created that Court; as the judge is empowered to issue such process as is needful for the discharge of the *168 trust reposed in him; and this power is recognized, but not originally given, by the statute of 1785, c. 12. <§> 3. This section relates only to the subscribing witnesses to a will; and the Probate Court, if its power to issue a dedimus was derived wholly from this section, could not cause the depositions of any other witnesses to be taken under a dedimus. And this provision was introduced to prevent any doubt as to the necessity of the personal attendance of the subscribing witnesses to the will, which it is supposed was then filed in Court. Therefore, where a dedimus to take the examination of the subscribing witnesses is necessary, the judge may permit the will to be taken out of Court, to accompany the dedimus, on proper security being given for its due return, as is done in chancery when the subscribing witnesses cannot swear to their attestation, unless on inspection of the original instrument.
But a dedimus cannot issue in any case, unless a cause be so far pending, that proper parties are or may be in Court, with such a knowledge of the matters in controversy, as to frame with pertinence all- the interrogatories necessary to support their respective alegations.
This rule is analogous to the statute regulation for taking depositions. Before the plaintiff can take a deposition, his writ, which includes his count, must be served on the defendant; who thus has notice of the matters in controversy as fully as if the writ had been returned, and was pending in Court.
But in the Probate Court, when the lis contestata is upon the exe cution of a will, the will, as the foundation of the suit, must be present in Court, before a dedimus can issue. The offering of the will for probate is the institution of the suit. It is true, the devisee or executor may allege to the judge, that such a will is [ * 223 J in existence ; * he may state to him the contents, and the names of the subscribing witnesses; he may exhibit evidence to support his allegations ; and he may pray a citation to all parties interested, to show cause why the will, when produced, should not be proved. But if the judge, satisfied with these allegations, should issue citations, and a party adverse in interest to the probate should appear, he will then find no controversy pending. All he can learn is, that there may be a controversy, when the original will is offered; for until then, the judge has no authority to proceed. This rule is recognized by the statute of 1785, c. 12., which provides that the depositions of the subscribing witnesses to a will may be taken under a dedimus when the will is offered for probate.
A different rule might subject a party adverse in interest to great inconvenience. The nature of his interrogatories might depend on the inspection of the will. It might appear to be signed by the tes *169 tator, or it might purport to be signed by some other person by his direction: the hand-writing of the testator, and of the subscribing witnesses, maybe known to the party: he may recognize, or he may deny their signatures. How, then, without a sight of the will, can he frame his interrogatories ?
But one answer occurs: — that he might frame them so as to bring into question every possible fact that can arise in any cause instituted to obtain the probate of any will. This might be very inconvenient, as it might compel him to prepare for litigating many points, which, if he could have seen the will, he would have admitted.
Further, if a judge can call the parties before him, and issue a dedimus, on receiving a paper purporting to be a copy, what evidence has he that it is a true copy ? In the present case, the copy was certified by an American consul. But he is not made by law a certifying officer of the copy of a will. Neither is a public notary. And the law has not ascertained what evidence of a copy shall be sufficient. It is admitted by the appellee, * that if it [ * 224 ] afterwards appear that the copy produced was not a true copy, the depositions must be suppressed. Upon this admission it must be concluded, if the present dedimus is to be supported, that a judge may regularly issue a dedimus, when it does not judicially appear that he has authority. For an error in the copy would vacate the dedimus. This conclusion must be rejected; for to vacate the writ, it must appear that it irregularly issue, either for want of authority to issue any such writ, or because it was issued in a case not authorizing it.
The appellee has suggested great inconvenience, as resulting from a rule, requiring the production of the original will before a dedimus can issue.
Our laws have made every reasonable provision to guard against this inconvenience. Instead of supposing a ¿ose, let us take the present. The appellee might have proved this will in Cuba, where part of the deceased’s real estate lies. Afterwards a copy of the will, certified under the seal of the Court of that island approving it, with a copy of the probate, might have been transmitted, and been filed and recorded here, if no reasonable objection had been made. And this record would have been, as to the estate here, equivalent to a probate. But this course has not been pursued; although we cannot suppose that a probate in this state would establish the title of the devisee to the lands in that island.
But if we suppose this will to have been made in a country where there is no Court analogous to a Probate Court, it may not be necessary to send the will back after it has been filed here, to obtain the testimony of the subscribing witnesses. A copy might have *170 been taken, and compared by the subscribing witnesses, who might make their marks on the original, and deliver it to the persons who were coming to this state with the will. Could they not have annexed this copy to their depositions, swearing that they attested the original, which they marked and delivered to certain persons whom they name ? and could not those persons depose here, [ * 225 ] that the original * they produce they received from the subscribing witnesses, and is the same instrument they marked ?
But a case may be so circumstanced, that the will must be sent back to the subscribing witnesses. When this happens, the devisees, who wish to avail themselves of the bounty of the testator, must submit to the hazard and inconvenience of sending it back, or suffer the heirs to avail themselves of their hereditary rights. And the hazard is not greater than in sending abroad a bond or other instrument, to obtain evidence of its execution, which is sometimes necessary.
We are therefore satisfied that the commission issued irregularly, and for this cause it must be suppressed. For it is admitted that the appellant expressly objected to the issuing of it before the original will was produced.
It is also objected to the evidence, that if the commission was regular, the depositions were not regularly taken; because two of the witnesses did not understand English, and two of the commissioners did not understand French, and no authority was given by the commission to swear an interpreter, and no person was sworn to interpret truly between the witnesses and the commissioners.
As this point may often arise in practice, we have taken it into consideration. The testimony of witnesses, whether viva voce, or in writing, cannot be admitted in evidence to a jury, unless there is regular evidence that it was given on oath duly administered. In this case, two of the witnesses not understanding English, and two of the commissioners not understanding French, there is no evidence that the affidavits of these witnesses is their testimony given on oath, but the declaration of the interpreter. If he was not on oath, there is no evidence given on oath of the testimony of these two witnesses, or that they testified on oath. We admit that the commissioners had authority to swear an interpreter, although not [ * 226 ] expressly mentioned in the commission; * for they had authority to examine on oath such witnesses as should be produced, and the interpreter, for this purpose, is a witness produced in the cause; and also because the authority to swear an interpreter is necessary, for the examination of witnesses, whose language the com* *171 missioners do not understand, but which witnesses they are authorized to examine on oath.
But there is no return of the commissioners that Masías, who appears to have acted as interpreter, was sworn by the commissioners to interpret between them and the witnesses. To remove this difficulty, it is said that he acted in the character of a public sworn interpreter of the place. These sworn interpreters are frequently appointed in foreign ports, to facilitate commercial intercourse between strangers and the inhabitants. But we know not the nature or extent of the oath under which they act, and are satisfied that the employment of a person as a public sworn interpreter, is not sufficient ; but he ought to have been sworn by the commissioners, truly to interpret between them and the witnesses. It is said that this was the fact, as appears from the depositions of one of the commissioners taken afterwards, under another commission. We have the depositions of the interpreter, and of the other two commissioners, taken at the appellant’s motion ; but they are silent as to this point. The words of the first commissioner are, “ Masías, who was sworn to interpret, he being a sworn interpreter.” The language is equivocal, it not appearing with certainty, whether it was the intent of the commissioner, that Masías was sworn to interpret, as included in his oath of a public interpreter, or whether he was then sworn by the commissioners. But admitting the latter to be the construction, yet we are satisfied the difficulty is not removed. The commissioners ought to have returned this fact, and the omission cannot be supplied by the affidavit of one commissioner taken after-wards. If a justice of the peace, who had taken a * dep- [ * 227 | osition, had omitted to certify that the deponent was sworn, this defect could not be supplied by a subsequent affidavit of the justice, that the deponent was sworn.
But another objection is stated, that the appellee prepared and wrote the depositions in the absence of the witnesses, before they appeared before the commissioners.
This objection is fatal. The mere form of the caption, or the stating of the question, might have been got over. But here the answers may be considered as stated, for the depositions contained all the facts afterwards sworn to.
The appellant has also objected to the direction of the Court. The statute, by virtue of which this issue was joined, and tried by the country, authorizes the Court, whenever either the sanity of the testator, or the attestation of the subscribing witnesses in his presence, are in dispute, to cause these facts to be tried by a jury. At the trial of the issue in this cause, the appellant’s counsel construed the issue as including only the signing of the subscribing witnesses in the *172 testator’s presence. This construction was not opposed by the counsel for the appellee, and was admitted by the Court. Under this impression, the jury were directed, that in the trial of this issue the fact of the signing of the testator might be taken for granted, as it was no part of the issue. The appellant’s counsel now say, that, on further consideration, they are satisfied that they were mistaken in their construction, and that the signing by the testator was a part of the issue; and therefore they object to the direction of the Court.
The words “the attestation of the witnesses in the testator’s presence,” may be confined to their subscription in his presence; but on deliberation, it is our opinion that the most just and reasona ble construction is, that this attestation includes the facts attested to, and not merely the subscription of their names. This is the most natural import of the words; and this construction [ * 228 ] * is strongly supported by the extreme difficulty of assigning any plausible reason why the legislature should authorize a jury to decide on the subscription of the witnesses in the testator’s presence, and not on the signing and publication by him.
The verdict, therefore, finds a fact, which was considered as not in issue, and which the jury were instructed not to inquire mto, but to take for granted.
But we also add, that if the jury were by law confined to inquire into the subscription by the witnesses only, yet we are satisfied that they ought not to have taken the signing by the testator as granted; because, connected with other evidence in the cause, the jury might infer from it the fact of the subscription of the witnesses, which certainly was in issue. If the fact of the testator’s signing had not been in issue, yet the appellee might have given it in evidence, because connecting it with the other evidence in the cause, the jury might have inferred the existence of the facts in issue.
There is another objection to th* direction of the Court, which is of the negative kind. It appeared from the evidence taken under the first commission, that the subscribing witnesses swore to their subscribing their names in the testator’s presence. It appears from the evidence taken under the second commission, that two of these witnesses swore that they did not subscribe their names until after his death. Whence the appellant’s counsel infer that they are not credible witnesses, and as there was but one witness who swore that all three subscribed in his presence, the testator did not sign in the presence of three credible witnesses, and that the Court ought so to have directed the jury.
This is a legal objection, and if it should prevail, it would be *173 unnecessary to send the issue to another jury for trial. But we are clearly satisfied that this objection cannot prevail. The' construction of the words credible witness, used in an English statute of wills, has heretofore been a subject of much dispute. In our opinion, it * is used in the sense of competent; and those [ * 229 ] witnesses are credible, whom the law will trust to testify to a jury, who may afterwards ascertain the degree of credit they have. Upon any other construction we must conclude that the law has authorized the admission of incredible witnesses, and submitted their credit, of which the law presúmes they have none, to be weighed by a jury.
There is another difficulty. The judges must determine whether witnesses are competent, and rules of determination are prescribed to them ; but the judges are not intrusted to decide what witness is credible. This is within the exclusive powers of a jury. The appellant has admitted that the objection ought not to prevail, if the denial by the witnesses of their subscription was the effect of fraud. In this cause, fraud was certainly attempted to be proved. But we do not- see any ground for the distinction. If the witnesses are competent at the trial, they must be sworn, and the whole evidence must be left with the jury. If they are satisfied that the will was executed in the presence of three witnesses, who then were competent, so that the law would permit them to be sworn, and their credit to be weighed, it is enough. The objection, therefore, goes to the weight of the evidence ; and on this ground we are by no means prepared to say that the verdict was against the weight of the evidence laid before the jury.
We are satisfied that the commission issued too soon, that it was irregularly executed, and that the construction of the issue tried, was misconceived ; and that for these reasons the verdict must be set aside.
As to this last reason, if the issue had been rightly conceived, although the jury were directed to consider as granted, the fact oi the testator’s signing, which could be determined only by the Court; yet if, on inquiry by the Court, it should be settled as a fact that the testator did sign, there would seem to be no reason to send the cause to another jury, who would have in proof the same fact which the former jury considered as proved.

Let a new trial be granted.