REED and Another *v.* WATSON and Another.

WILL.—CONTEST OF.—It is sufficient, in a complaint to contest the validity of a will, to allege, in general terms, that the will was unduly executed.

SAME.—EXECUTION OF.—A will must be signed by the testator, or by some one in his presence, with his consent, and must be attested and subscribed in his presence by two or more competent witnesses.

SAME.—The signature of the testator is necessary to make the instrument a valid will, and until such signature is affixed, the will cannot be attested by witnesses.

SAME.—The statute does not, in terms, require the testator's name to be signed in the presence of the witnesses, but if this is not done, the testator must acknowledge his signature in their presence.

SAME.—Where a will was signed by a witness before the signature of the testator was affixed, and the instrument was then taken away by the testator, with the declaration that he would sign it when he got another witness, and he did afterwards sign it in the presence of another witness, *Held,* that the attestation of the will was not sufficient under the statute.

*Held,* also, that the declaration of the testator at the time the will was attested by the first witness, and the fact that he afterwards signed it, rebutted any presumption that he intended to adopt the name written in the body of the instrument as his signature.

APPEAL from the *Harrison* Common Pleas.

ELLIOTT, C. J.—This is a suit brought by the appellees, *Sophia Watson* and *Henry Watson,* her husband, against *Isaac E. Reed* and *Robert Reed,* the appellants, and others, to contest the validity of the will of *John Reed,* deceased, and to set aside the probate thereof.

The material averments in the complaint are as follows: That *John Reed* died at the county of *Harrison, Indiana,* on the —— day of *December,* 1865, possessed of an estate in said county of the probable value of $12,000, leaving as his children, and only heirs at law, the plaintiff, *Sophia Watson,* and the defendants, *Isaac E. Reed, Robert Reed, Mary Ann Chaffin, Sarah Elizabeth Stansifer, Henry H. Reed* and *Martha R. Watson;* that on the 12th of *December,* 1865, a writing purporting to be the last will and testament of said

*John Reed*, deceased, was produced before the clerk of said Court of Common Pleas, and the affidavit of *Francis Reese*, subscribed and. sworn to before said clerk, was annexed thereto, as the proof of the execution thereof; that it was thereupon admitted to probate by said clerk, and filed and recorded in the record of wills of said county, as the last will and testament of said decedent; that letters testamentary were issued thereon by the clerk of said court to the defendants, *Isaac E.*, and *Robert Reed*, who thereupon filed bond and were qualified, "and are assuming to act as executors of said pretended will, and have the possession of a large portion of said estate. The plaintiffs aver, first, that the probate of said supposed will is invalid, because, although the said *Reese* stated in his affidavit that said will was signed, sealed, published and declared by said decedent as his last will and testament, in the presence of said *Reese* and *Vincent Marsh*, and that they signed their names thereto as subscribing witnesses in the presence and at the request of the testator, and that said decedent, at the time of executing the same, was not under restraint or coercion in any way .whatever, yet in truth and in fact, said *Francis Reese* was not present, and knew nothing of the signing of said will by said *John Reed*, and that said *Reese* was not present and knew nothing of the signing of said will by said *Vincent Marsh*, as a subscribing witness thereto; that said *Reese* had no knowledge of. the execution of said will, or of its attestation, except that he signed the same as an attesting witness at the request of said *Reed*, and that, in fact, said *Marsh* did not sign said will as an attesting witness, as stated in the affidavit of said *Reese;* that if said *Marsh* subscribed his name thereto, he did so long before the said *Reed*, the testator, signed the same. "And the plaintiffs aver, secondly, that said will is invalid, for the reason that the same was unduly executed." A copy of the will and the probate thereof are made part of the complaint. Prayer that the probate of the will, and the letters testamentary granted thereon, be revoked and set aside, and that

the will be declared illegal and void. The complaint is verified by the affidavit of the plaintiffs.

The defendants, *Isaac E. Reed* and *Robert Reed,* regarding the complaint as containing two paragraphs, filed a separate demurrer to each paragraph. The demurrers were overruled, and they then filed an answer in denial of the complaint. The cause was submitted to the court for trial, a jury being waived. The court found for the plaintiffs, that the will was unduly executed, and was therefore void. A motion for a new trial was interposed by the appellants and overruled, and judgment was then rendered for the plaintiffs revoking the letters testamentary granted to the appellants, and declaring the will illegal and void.

The first question raised by the appellants, is that the court erred in overruling the demurrer to the second paragraph of the complaint,

We think the complaint is entire, and contains but a single paragraph, and shows a valid cause of action. But if the closing averment of the complaint, that "the will is invalid, for the reason that the same was unduly executed," should be regarded as a second paragraph, or cause of action, it would still be sufficient, under the ruling of the court in *Kenworthy* v. *Williams,* 5 Ind. 375, where it was held sufficient to allege the undue· execution of the will in general terms, without alleging whether by fraud, duress or otherwise.

One of the causes assigned for a new trial is, that the finding of the court is contrary to law, and to the evidence in the case, which raises the principal question discussed by counsel on either side, namely, was the will executed in conformity to the statute? .

The facts relative to the execution of the will, upon which the finding of the lower court is evidently based, and which the evidence so clearly tends to establish as to require this court, in determining the legal question involved, to assume as true, are these: The will was written on the third or fourth of *May,* 1862, by *Vincent Marsh,* at his own

house, at the request of *Reed*, the testator. Immediately after the will was written, *Marsh* read it to *Reed*, in the presence of two other persons. *Reed* said, "it will do," and then requested *Marsh* to sign it as a witness, which he did in *Reed's* presence. *Reed* did not sign it at that time, but put it in his hat and said he would sign it at another time, or when he got another witness, and left for home, taking the will with him. About the first of *July*, 1862, *Francis Reese*, the other subscribing witness, was at *Reed's* house, when the latter produced the will and requested him to subscribe it as a witness, which he then did in *Reed's* presence. *Reed* had signed it before *Reese* saw it, but he declared to the latter that it was his will. *Vincent Marsh* was not present, and *Reese* knew nothing about his having subscribed the will as a witness, except that he saw his name to it. The will bears date *May* 3, 1862, which was *Saturday*, but it is not clear from the evidence whether it was written on that day or the day following.

*Isaac E. Reed*, one of the appellants, testified that his father brought the will home on *Sunday*, the fourth, and gave it to him to read the same evening, and that his father's name had been signed to it before he saw it. The body of the will and the signature of *Marsh* were written in pale ink, but the signature of *Reed*, the testator, was written with quite black ink. *Vincent Marsh*, at the time he wrote the will, had but one kind of ink. There was no evidence even tending to show that *Reed* signed the will in the presence of *Marsh*, or that the latter ever saw it after *Reed's* name was signed to it, or knew that *Reed* had signed it.

Did *Marsh* attest and subscribe the will as a witness, as required by the statute? This is the material question presented by the facts of the case.

Section eighteen of the statute concerning wills provides that "no will, except a *nuncupative* will, shall affect any estate, unless it be in writing, signed by the testator, or by some one in his presence, with his consent, and attested and subscribed in his presence by two or more competent

witnesses, and if the witnesses are competent at the time of attesting, their subsequent incompetency shall not prevent the probate thereof." 2 G. & H. 555. This section of our statute is substantially the same as the fifth section of the *English* statute of 29 Car. II, for the prevention of frauds and perjuries, except that the latter related to devises of real estate only, and required "three or four" subscribing witnesses, instead of "two or more," as required by our statute. The *English* statute has also been substantiallly followed by legislative enactments of most of the *American* states. The will must be "signed by the testator, or by some one in his presence, with his consent, and attested and subscribed in his presence, by two or more competent witnesses." The evident meaning and purpose of the statute is, that to render an instrument valid as a will, at least two competent witnesses must attest, that is, witness, its publication or execution by the testator. It is not a will, under the statute, until the signature of the testator is affixed to it. It is that which they are required to witness, and they must therefore know that the final act of execution, the signature of the testator, is consummated before they can attest it. Having thus attested its publication or execution, they are then required to subscribe their names to it as witnesses of the fact. To attest is one thing, to subscribe is another. The statute does not, in terms, require the testator's name to be signed in the presence of the witnesses; but he must either sign or acknowledge his signature in their presence, and then they must subscribe as witnesses in his presence. 1 Redfield on Wills 247, note; *Amory* v. *Fellows' Exr.*, 5 Mass. 219.

In a recent case in the Supreme Court of *Massachusetts*, in which it was held that it is not a sufficient attestation for a subscribing witness to write his name in the absence of the testator, and in anticipation of the testator's signature, although he afterwards acknowledges it in the presence of the testator and of the other subscribing witness, a large number of cases bearing on this, and other questions rela-

ting to the execution of wills, are collected and commented upon, in an elaborate opinion by GRAY, J., in which it is said: " The statute requires that the will shall 'be in writing and signed by the testator,' and shall be 'attested and subscribed, in the presence of the testator, by three or more competent witnesses.' He is not required to write his signature in their presence, but it is his will which they are to attest and subscribe. It must be his will in writing, though he need not declare it to be such. It must therefore be signed by him before it can be attested by the witnesses. He must either sign in their presence, or acknowledge his signature to them, before they can attest it." *Chase* v. *Kittredge,* 11 Allen 49.

In *Swift* v. *Wiley,* 1 B. Mon. 114, decided by the Court of Appeals of *Kentucky,* under a statute, in effect, the same as ours, it was said by ROBERTSON, C. J., that "as the statute requires two witnesses to the publication of a will disposing of real estate, the paper subscribed by the witnesses must, of course, be completed as a legal will at the time of the attestation," &c. " To attest the publication of a paper as a last will, and to subscribe to that paper the names of the witnesses, are very different things, and are required for obviously distinct and different ends. Attestation is the act of the senses. Subscription is the act of the hand. The one is mental, the other mechanical; and to attest a will is to know that it was published as such, and to certify the facts required to constitute an actual and legal publication; but to subscribe a paper published as a will, is only to write on the same paper the names of the witnesses, for the sole purpose of identification. There may be a perfect attestation, in fact, without subscription." See also *O'Brien* v. *Gallagher,* 25 Conn. 229.

The authorities, we think, all concur, that, to constitute a valid attestation of a will, the testator must either sign it in the presence of the subscribing witnesses, or acknowledge his signature to them. Here, as we have seen, the testator did not sign the will in the presence of *Marsh,*

one of the subscribing witnesses, and it does not appear that *Marsh* ever saw the will after it was signed by *Reed*, or knew that it was so signed. He did not therefore attest its execution.

But it is insisted by counsel that, as the statute does not direct the particular place of signing, it need not be at the foot or close of the will, and as the name of the testator may be signed by another person, in his presence, with his consent, that *Reed*, by requesting *Marsh* to subscribe the paper as a witness, thereby adopted the writing of his name at the beginning of his will as his signature thereto. In the very nature of things, the more appropriate place for the signature is at the conclusion, or foot, of the instrument, and the custom of placing the signature at that place is so nearly universal that the propriety of recognizing the name, if placed elsewhere, as the final signature of the party, may be seriously doubted. But the desire of the courts to give effect to instruments which are presumed to show the disposition intended to be made by the party of his property, and to avoid apparent hardships, has led to a virtual evasion of the letter of the statute, and has rendered the act of final signature of no importance, in case the instrument is written by the testator himself, or its contents are made known to him, and he requests the witnesses to subscribe it as his will. The statute requires that a will shall be signed by the testator, and this requirement cannot be directly dispensed with, but it is evaded by admitting proof of the intention of the testator to adopt the name written by himself, or by another draughtsman, either at the commencement, or in the body, of the instrument, as his final signature. A lax administration of this recognized right would lead to the greatest abuses, and would be an evasion of both the letter and spirit of the statute. See Redfield on Wills 212, note 27, where this question is discussed and cases cited.

Without pursuing the subject further here, it is sufficient, for the purposes of this decision, to say, that under the

most liberal rulings on the subject to which our attention has been called, it is required that it should clearly appear, from the evidence, that the testator intended to, and did, adopt the name thus written in the body of the instrument as his final signature, and he must, in effect, have declared that fact to the witnesses. Such were the cases of *Adams* v. *Field, Exr.*, 21 Verm. 256, and *Sarah Miles'* will, 4 Dana (Ky.) 1, cited by appellants. But in the case at bar, there is no evidence showing an intention, on the part of *Reed*, to adopt the name at the commencement of the instrument as his final signature, but just the contrary. When the instrument was written, and the name of *Marsh* subscribed to it as a witness, *Reed* took it, put it in his hat, and said he would sign it at another time, or when he got another witness, and he did subsequently sign it. There is, in fact, no pretext for saying that he adopted, or intended to adopt, the name written by *Marsh* in the commencement of the instrument as his signature thereto.

The finding and judgment of the court, we think, are clearly right, and should therefore be affirmed.

The judgment is affirmed, with costs.

*W. A. Porter, J. H. Butler* and *W. Q. Gresham,* for appellants.

*S. K. Wolfe, J. E. McDonald, A. L. Roache* and *D. Sheeks,* for appellees.