Galveston, Harrisburg & San Antonio Railway Company v. Solomon Jackson.

No. 857. Decided January 25, 1900.

1. Charge—Evidence to Support.

It is proper to submit to the jury an hypothesis supported by evidence and authorizing a recovery by plaintiff, though it requires the testimony of a witness to be in part accepted and in part rejected. (P. 265.)

**2. Same.**

The theory that an act of a fireman by which injury to another was caused was due to alarm from perceiving a "slow-up" signal by a trackman, was properly submitted to the jury to be passed on, where there was evidence that such was the signal given, though the fireman testified that his alarm was caused by a stop signal. (Pp. 264, 265.)

**3. Fellow Servant—Negligence Concurring.**

Negligence of plaintiff's fellow servant concurring with that of plaintiff's master to cause the injury will not defeat a recovery against the master. (Pp. 265, 266.)

**4. Impeachment of Witness—Hearsay—Predicate.**

Evidence of statements made by a witness may be admissible to impeach him, though otherwise but hearsay, and the objection that no predicate was laid for their introduction must be made at the time in order to be available. (P. 266.)

**5. Error—New Trial Should Remedy.**

Error will not be ground for reversal unless the injustice to the complaining party will be corrected on a new trial. (P. 266.)

**6. Same.**

A judgment will not be reversed for failure to comply with the law requiring the submission of special issues when requested, where such law has been so changed since the trial as to place the submission of special issues within the discretion of the trial judge. (Pp. 266, 267.)

ERROR to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

Suit was by Jackson against the railway company, and the latter obtained a writ of error upon a judgment by the Court of Civil Appeals affirming a recovery by plaintiff in the trial court. Certified questions in this case were answered by the Supreme Court as reported in 92 Texas, 639.

*Upson & Newton,* for plaintiff in error.—The charge of the court should submit only such issues to the jury as are made by the pleadings and evidence. Telegraph Co. v. Kendzora, 77 Texas, 257; Railway v. Wisenor, 66 Texas, 675; Willis v. Whitsett, 67 Texas, 676; Railway v. Harriett, 80 Texas, 73; Railway v. Ford, 46 S. W. Rep., 77.

The appellee and the flagman R. E. Tully were fellow servants, and the testimony showing that the negligence of Tully was the proximate cause of plaintiff's injury, the issue should have been submitted to the jury. Rev. Stats., art. 456.

If requested by a party to the suit, it is the duty of the court to submit special issues to the jury. Rev. Stats. 1895, arts. 1333, 1319; Loan Agency v. Fleming, 46 S. W. Rep., 63.

The court erred in permitting the witness Solomon Jackson to testify, over objection of defendant, that on the way from the depot to the hospital, after arriving in San Antonio, the fireman, Thornton McCormick, told him that when he saw the signal of the section foreman Daily he thought the track was up and left the engine, for this, that said testimony was immaterial, irrelevant, and was not admissible in support of any issue in said cause and was hearsay.

*T. M. Watlington* and *J. A. Buckler*, for appellee.

GAINES, CHIEF JUSTICE.—This action was brought by the defendant in error against the plaintiff in error to recover damages for personal injuries. He recovered a judgment in the trial court, which was affirmed in the Court of Civil Appeals.

The plaintiff was employed as a track repairer upon defendant's road and was engaged, at the time of the accident, with about twenty other hands, in repairing or raising the track. They were working under one Daily as foreman. A freight train was to pass the point at which they were at work on the morning of the accident. About fifteen minutes before the train was due, Daily sent one Tully out to signal the train to slow down. The train ran by the point where the plaintiff was at work at a rapid rate of speed, and, just as it passed the plaintiff the fireman, fearing a derailment, leaped from the engine, and striking the plaintiff, broke his leg. On one count in his petition, the plaintiff predicates his recovery upon the negligence of the fireman in jumping from the engine; in another, upon the negligence of the engineer in failing to see and to follow the signal to slow up or stop the car; and in still another, upon the defective equipment of the train with respect to brakes, by reason whereof, as alleged, it could not be stopped or "slowed up" in obedience to the signals which were given. In connection with the latter counts it is also alleged in substance that by reason of the signals given and the failure to check the speed of the train, the fireman became alarmed for his safety and made the leap.

There was evidence to show that the flagman who was sent out gave a signal,—whether a stop signal or a slow-up signal is not clear;—that as the train approached the place of the accident, the foreman and another gave a slow-up signal; that the train rushed by with but slight diminution of speed, if any, and that the fireman, through fright, jumped from the engine and injured the plaintiff as alleged.

The court charged the jury, among other things, as follows: "If you find from the evidence in this case that at the time the plaintiff, Solomon Jackson, was injured in the employ of defendant, a flagman or a section foreman signaled the train to stop or to slow up before it reached the place where the plaintiff was standing, and the signal was given in time for the said train to have stopped or slowed up before it reached said place, and that the engineer in charge of said train saw said signal, whichever was given, if either, and failed to obey it by stopping said train or slowing it up or negligently failed to see the said signal and on that account failed to stop said train or to slow it up, or, having seen the signal and attempted to stop said train or slow it up but was unable to do so before it reached the place where the plaintiff was standing on account of there not being a sufficient number of brakes on the train, should you find that there were not a sufficient number on it to enable the persons in charge of the train to stop it or slow it up with ordinary promptness, and that such failure to stop

said train or slow it up was negligence, and that the same was the approximate cause of the plaintiff's injury, and you further find that the fireman on the said engine, Thornton McCormick, saw said signal, whichever was given, if either, and saw that said train was not going to stop or slow up, and that he had, under all the circumstances, reasonable grounds for believing and did actually believe that he was in imminent danger of losing his life or receiving great bodily injury if he remained upon said engine, and so believing he jumped from said engine and in so doing fell, or was thrown against the plaintiff, and that plaintiff was thereby injured, and you further find that plaintiff was not himself guilty of any negligence which caused or contributed to said injury, you will find for the plaintiff."

The charge is complained of in the first assignment because it authorized the jury to find that a slow-up signal was given, and, in the second, because it submitted to them as an issue in the case the questions whether the fireman saw the slow-up signal and was alarmed thereby and caused to jump from the engine. It is claimed that there was no evidence to authorize the submission of these issues. The fireman testified that the flagman gave a stop signal and that that led him to believe that the track had been taken up and caused him to leave the engine. But, upon the question as to the signal which was given, there is a direct conflict in the testimony. Daily, the foreman, who was defendant's own witness, testified: "The flagman signaled the train to slow up." This suffices to show that there is nothing in the first assignment. As to the second, according to the testimony, it may have been that it was a slow-up signal that was given. If so, it must have been such a signal which alarmed the fireman and caused him to leap from the train, notwithstanding his evidence to the contrary.

But it is also assigned that the court erred in refusing a special charge requested in behalf of the defendant to the effect, first, that the plaintiff and the flagman were fellow servants, and second, that if the fireman jumped from the train by reason of an apprehension that his life was in danger and that such apprehension was caused by the flagman's giving a stop signal instead of a slow-up signal, as instructed, the jury should find for the defendant. We incline to think that the plaintiff and Tully, the flagman, were fellow servants, though the testimony of the plaintiff to the effect that he did nothing when he was not acting as boss makes it doubtful whether or not it can be said that the uncontradicted evidence shows that they were such. However that may be, the plaintiff in his petition did not seek a recovery on the ground that the flagman had negligently given the wrong signal, nor did the court in the charge submit such negligence as a predicate for a verdict in the plaintiff's favor. But plaintiff did claim that the accident was caused by reason of the negligence of the engineer in failing to obey the signal and of the negligence of the company in not properly equipping the train with sufficient brakes to properly check

its momentum when it became necessary to stop it or to diminish its speed. Although the flagman may have been negligent, yet the negligence of the engineer or the want of adequate appliances to check with promptness the speed of the train may have been a contributory cause,—a cause without which the accident would not have occurred. If so, the plaintiff was entitled to recover. Hence it was not proper to charge the jury to find for the defendant, provided the flagman's negligence caused the fireman to leave the engine, without at the same time submitting for the determination of the jury, the question of the negligence of the engineer and the lack of proper equipment in the way of brakes as contributing causes. The court's charge, we think, fully presented the issues made by the pleading and evidence, and is commendable for its brevity and clearness.

During the progress of the trial the plaintiff was permitted, over the objections of the defendant, to testify to certain statements made by the fireman, McCormick, after the accident. The objection was that the evidence was "immaterial and irrelevant to any issue in the case and hearsay." It was neither immaterial nor irrelevant, but it was hearsay. It was evidently offered, however, as impeaching testimony, and such being the purpose, that it was hearsay was not a sound objection to its introduction. The predicate for impeaching testimony may not have been properly laid, but that ground was not urged.

It is also assigned that the court erred in refusing to submit the case to the jury upon special issues at the request of the defendant. Under the law in force at the time the case was tried, the court had no discretion. The law was imperative that, when requested by either party, the case should be submitted upon special issues. Rev. Stats., art. 1333. We so held in the determination of a certified question in this same case. G. H. & S. A. Ry. Co. v. Jackson, 92 Texas, 638. But, since the trial, the statute has been so amended as to leave it in the discretion of the court to require of the jury a general verdict or a verdict in answer to special issues. Laws 1899, p. 190. Therefore, should the judgment be now reversed and a new trial awarded, it might, under the present law, be submitted to the jury precisely as it was submitted before. If injury has resulted to the defendant from the action of the court in the particular under consideration, it is an injury that can not be repaired by another trial. When an appellate court reverses the judgment of the trial court and awards a new trial, the cause should be remanded to be tried in accordance with the opinion of the appellate court. In other words, where it is found that the trial court has committed error, it is in effect commanded to reverse its ruling. That can not be done in this case. It is clear that we can not properly direct the trial court to submit special issues upon another trial. We apprehend that should a trial court erroneously refuse a continuance on account of the absence of a witness and a motion for a new trial be presented upon that ground, it would be refused,

although the court should be convinced of its error,—provided it was made properly to appear that, by reason of death or other cause, the testimony of the witness could not be had upon another trial.

We conclude that the judgment ought not to be reversed for the error of the court in refusing to submit special issues to the jury, and, finding no other error, it is affirmed.

*Affirmed.*