## HENGY v. HENGY.

(Court of Civil Appeals of Texas. San Antonio. Dec. 11, 1912.)

1. PARTNERSHIP (§ 68*) — REAL PROPERTY — MISAPPROPRIATION OF FIRM FUNDS.

Where a partner incurs a debt to secure money to buy land, and subsequently pays such debt out of partnership funds, the partnership does not thereby acquire any claim on the land.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 101–111; Dec. Dig. § 68.*]

2. TRUSTS (§ 41*) — ESTABLISHMENT — EVIDENCE—BURDEN OF PROOF.

A party seeking to establish a trust in his favor in land the legal title to which is in another has the burden of proving the facts necessary to constitute a trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 60; Dec. Dig. § 41.*]

3. PARTNERSHIP (§ 329*) — ACCOUNTING — TRIAL—INSTRUCTIONS.

Plaintiff suing for a partnership settlement alleged that certain land was purchased by the partnership, it having been agreed that he should pay one half of the purchase money out of his individual funds, and that defendant should pay the other half, that he did pay one half out of his individual funds, and that defendant paid the other half at first through a loan and later out of partnership proceeds without plaintiff's knowledge. He alleged in one place that he was the owner of three-fourths of the lot, and at another that it became partnership assets. Defendant denied that the land was so purchased and claimed it as his individual property. Plaintiff testified that each paid one-half of the purchase price, and that the partnership afterwards paid each of them back. The court charged to find for defendant unless the jury believed plaintiff paid one-half of the purchase money individually, in which case they should find that he was the owner of an undivided one-half interest, to which plaintiff excepted on the ground that the real issue was whether the property was bought for the partnership. *Held*, that plaintiff having made the specific issue and testified. that he paid half the purchase money individually, and the allegations of the petition being contradictory, the court properly submitted the question whether he did so pay one-half individually as being the most specific claim asserted.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 782–786; Dec. Dig. § 329.*]

4. PARTNERSHIP (§ 67*) — FIRM PROPERTY — WHAT CONSTITUTES.

Where a partner withdraws money from the business with the knowledge and consent of his copartner, property purchased therewith is not partnership property, such partner being merely charged with the money so withdrawn on the settlement of the partnership accounts;

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

but, where the money is withdrawn in bad faith and without the knowledge and consent of the other partner, the property purchased therewith is firm property, especially where such partner credits the firm with rents, and charges it with taxes and insurance on such property.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 95–100; Dec. Dig. § 67.*]

**5. TRIAL (§ 256*)—INSTRUCTIONS—ERROR NOT CURED.**

An erroneous charge to find for defendant, unless certain facts existed, was affirmatively erroneous, since a special charge to find for plaintiff upon other facts would have been contradictory thereof.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

**6. TRIAL (§ 244*) — INSTRUCTIONS — UNDUE PROMINENCE OF SUBJECT.**

On a partnership accounting, an instruction that if plaintiff knew of proceedings to condemn land claimed by him to have been partnership property, and had an opportunity to set up and claim his rights therein and did not, these facts might be considered in determining whether the land was partnership property, was improper; there being no claim that these facts estopped plaintiff, since the court should not single out a portion of the evidence and tell the jury to consider it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 577–581; Dec. Dig. § 244.*]

**7. FORCIBLE ENTRY AND DETAINER (§ 6*) — TRIAL OF TITLE AND RIGHT OF POSSESSION —RENTS.**

On a partnership accounting, an instruction that no rents of lands claimed to be partnership property could be awarded because certain judgments in forcible entry and detainer cases had established defendant's right thereto was erroneous, since under Sayles' Ann. Civ. St. 1897, art. 2529, providing that the only issue in such cases shall be as to the right to actual possession, and article 2542, providing that such proceedings shall not bar an action for trespass, damages, waste, rent, or mesne profits, a judgment in forcible entry and detainer merely disposes of the right of possession and determines nothing concerning the rents.

[Ed. Note.—For other cases, see Forcible Entry and Detainer, Cent. Dig. §§ 29–33; Dec. Dig. § 6.*]

**8. PARTNERSHIP (§ 336*) — ACCOUNTING — TRIAL—EVIDENCE.**

On a partnership accounting, where plaintiff claimed that land, the legal title to which was in defendant, was partnership property, while defendant claimed that he purchased it out of his personal funds, and that part of such funds had previously been deposited by him in a bank, the exclusion of his bank account, offered for the purpose of showing that he made no such deposit, was erroneous.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 797; Dec. Dig. § 336.*]

**9. PARTNERSHIP (§ 336*) — ACCOUNTING — TRIAL—EVIDENCE.**

On a partnership accounting between a father and son, a letter written to the son by the father while in another state, giving a list of his properties in that state, with their values, was irrelevant, not being relevant, as claimed, to show what money he took with him to that state or what had been sent him.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 797; Dec. Dig. § 336.*]

**10. PARTNERSHIP (§ 336*) — ACCOUNTING — TRIAL—EVIDENCE.**

The admission of such letter was prejudicial error, being calculated to impress the jury with the idea that the father, having considerable property in the other state, could well afford to be generous to the son.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 797; Dec. Dig. § 336.*]

**11. TRIAL (§ 256*)—INSTRUCTIONS—NECESSITY OF REQUEST FOR MORE SPECIFIC INSTRUCTIONS.**

On a partnership accounting, plaintiff claimed that he bought defendant's interest June 30, 1902, and formed a new partnership with him February 14, 1903, and that the business between those dates and money withdrawn by him belonged to him. The court charged that the partnership existing June 30, 1902, was presumed to exist and continue unless the jury believed from the evidence that it was dissolved. *Held,* that the instruction was correct as far as it went, and the court's failure to submit the questions whether plaintiff bought out defendant and afterwards formed a new partnership, and to instruct the jury if they so found to credit each partner with the amount paid in on the formation of the new partnership, to credit plaintiff with the profits during the time intervening between the dissolution and the formation of the new partnership, and to credit defendant with wages during that period, was not reversible error, in the absence of a request for the submission of special charges.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

**12. TRIAL (§ 348*)—SPECIAL INTERROGATORIES —POWER AND DUTY OF COURT.**

Under Sayles' Ann. Civ. St. 1897, art. 1328, providing that verdicts are either general or special, and article 1333, providing that the jury shall render a general or special verdict as directed by the court at the request of a party and the verdict shall comprehend the whole issue or all of the issues submitted, the court should not so submit the case as that the verdict may be part general and part special, and hence, where it had decided not to submit the case on special issues, the refusal to submit two special issues requested by plaintiff was not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 822; Dec. Dig. § 348.*]

**13. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR — GENERAL AND SPECIAL INSTRUCTIONS.**

The trial court in its charge recited that it submitted the case upon special charges presented to it, but did not recite which side presented them, and then instructed the jury in a general charge embracing the issue presumably covered by the special charge. *Held,* that plaintiff could not have been injured by the recital that the case was submitted on special charges, although such special charges were presented by defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

**14. TRIAL (§ 256*) — INSTRUCTIONS — OMISSIONS.**

The failure of the trial court in its charge to apply all of the law applicable to the case should have been cured by offering special charges.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**15. TRIAL (§ 349*)—SPECIAL INTERROGATORIES —SUBMISSION—DISCRETION.**

Under Sayles' Ann. Civ. St. 1897, art. 1333, as amended by Acts 26th Leg. c. 111, providing that the jury shall render a general or special verdict as directed by the court, which shall comprehend the whole issue or all the issues submitted to them, and that a case shall not be submitted on special issues unless one or all parties request such submission, the submission of the case on special issues is in the discretion of the trial court.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 823–827; Dec. Dig. § 349.*]

**16. PARTNERSHIP (§ 342*) — ACCOUNTING — REFERENCE—REPORT.**

On a partnership accounting, where there was a dispute as to the date when the partnership commenced, an auditor, having no power to pass upon this question, properly reported the amount due each of the partners on each of the different theories concerning such date.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 810, 812; Dec. Dig. § 342.*]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by F. J. Hengy against Louis Hengy. From the judgment, plaintiff appeals. Reversed and remanded.

Charles F. Clint, Chilton & Chilton, and Plowman & Plowman, all of Dallas, for appellant. Jeff Word, of Dallas, for appellee.

MOURSUND, J. On June 9, 1906, F. J. Hengy sued his son, Louis Hengy, for the settlement of a partnership in the junk business, which he alleged had been formed between them on February 14, 1903. Among other matters, he alleged that a lot, known as the Bessard lot, was purchased by the partnership of F. J. Hengy & Son for $2,000, it having been agreed that plaintiff, out of his individual funds, should pay one half of the purchase money, and that the defendant should pay the other half; that plaintiff paid his half ($1,000) out of his individual funds, and defendant paid for the remaining half, first through a loan, and finally out of partnership proceeds, of which latter fact plaintiff remained in ignorance until long after the payment by defendant of his half of said purchase money; that defendant fraudulently, without plaintiff's knowledge, took the deed in his own name; that the lot was used as partnership property, and it was agreed that same should be bought for the partnership. It was further alleged that plaintiff left for Idaho shortly after the formation of the partnership and remained there, with short intervals, until shortly before the bringing of this suit; that about March 22, 1905, while plaintiff was absent in Idaho, defendant also purchased with the proceeds and money of the partnership business a lot known as the Becker lot, for $2,350.25 cash, but, without plaintiff's knowledge and with intent to defraud him, took the title in his own name, of which fact plaintiff remained in ignorance until just before the institution of this suit; that defendant acknowledged said lot to be partnership property. It was further alleged that defendant appropriated to his own use $2,500 paid for portions of said lots in a condemnation proceeding, also other moneys and effects amounting to $9,045, and collected $1,587.97 on account of the partnership, which he did not account for, also $1,350 rent for part of the Bessard lot and $1,441 rent for part of the Becker lot. He further alleged that there was on hand a stock of junk worth $750 and a deposit in the National Bank of Commerce of $5,275.94. Plaintiff set out the sums claimed by him, prayed for settlement of the partnership's affairs, that he recover judgment for the sums sued for, and that his partnership interest in the two lots be awarded him.

Defendant denied the partnership as set up in plaintiff's petition, alleging that he was by his father associated with him in the junk business in July, 1895, without any agreement as to terms of the partnership, and about May 1, 1899, they agreed on the terms of the partnership which terms were set out, but are not necessary to be mentioned here; that on August 27, 1900, plaintiff's wife sued for divorce and partition of community property, making defendant a party to the suit; that about March, 1902, plaintiff caused an accounting to be had in said suit between himself and defendant in regard to the firm property, in which it was determined that the assets consisted of $2,471.62, of which plaintiff was entitled to $836.16, and defendant to $1,635.46; that said judgment determined the existence of a partnership between them. He further alleged the various amounts paid in, profits made, amounts paid out, etc., and claimed the two lots as his exclusive property, alleging they were paid for with his own money.

Plaintiff filed supplemental petition, in which, after denying the partnership as alleged by defendant, and other allegations, he pleaded that the judgment in the divorce suit was an accommodation judgment; that, at the solicitation of defendant and in pursuance of his advice to the effect that it was necessary in order to keep the business from being destroyed by reason of Mrs. Hengy's suit, he agreed that defendant should claim to be a partner; that in order to clear up said judgment in the divorce suit he paid defendant $500 about October, 1902, in full and final settlement of the supposed partnership, interest, and judgment.

The trial resulted in a verdict and judgment awarding defendant the two lots and $836.39 of the money in the National Bank of Commerce, and plaintiff $3,699.55 of said money.

The first assignment of error is as follows: "The court erred, at the instance of appellee, in charging the jury, in relation to the Bessard lot, as follows: 'You will find by your verdict that this lot is the property of the defendant, unless you believe from the evi-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

dence that the plaintiff paid with his individual money one half of the purchase money, in which event you will find by your verdict that plaintiff owns an undivided one half interest of said lot, and the defendant the other half" —in that, as disclosed by the evidence, plaintiff did not contend that he paid out of his individual funds one-half of the purchase money of said lot, but that said lot was bought with the partnership funds of F. J. Hengy & Son, for partnership purposes, and was necessary to be used by said partnership in the conduct of its business, and was so used, and in that although appellant did contend that he paid out, out of his individual funds, one-half of the purchase money of said lot, and the jury may have believed to the contrary, yet, if appellant's one-half of the purchase money of said lot or appellee's one-half thereof, or the whole thereof, was paid out of the partnership funds, and said lot bought and used for partnership purposes, as the great preponderance of the testimony in this case shows, still, under said charge, the jury would nevertheless be bound to find that said lot belonged to the appellee, as will more fully appear from the court's charge and the pleading and evidence in this case." The proposition made under the assignment is as follows: "The court erred in instructing the jury that they will find that the Bessard lot (lot 5) is the property of defendant, unless they believe from the evidence that the plaintiff paid with his individual money one-half the purchase money."

In the treatment of this assignment we are not favored with any clear statement of what appellant thinks should have been charged by the court. The issues made by the pleadings, if supported by evidence, should be submitted. In this case plaintiff's allegations are rather contradictory in so far as they relate to the Bessard lot. He alleges that said lot was purchased by F. J. Hengy & Son, "it having been agreed that plaintiff, out of his individual funds, should pay one half the purchase money for said lot, and that defendant, by loan or otherwise, should pay for the other half of said lot, and plaintiff paid his one half thereof, or $1,000, out of his individual funds, and the defendant paid for the remaining half thereof, $1,000, first through a loan, and finally out of the proceeds of said partnership and money belonging to said partnership." He further alleged that he remained in ignorance of the latter fact until long after defendant paid his half of the purchase money, and also of the fact that defendant took the deed in his own name instead of that of F. J. Hengy & Son, or to plaintiff and defendant, as it was agreed it should be, and that said act was fraudulent. He further alleged that it was agreed that said lot should become partnership property and be used as such, and that it was in fact treated as partnership property by defendant until just before the filing of the suit. At one place he alleged he was the owner of three-fourths of the lot, and at another that it became partnership assets. Defendant denied that the lot was purchased with the money of F. J. Hengy or the firm of F. J. Hengy & Son, or for the partnership, and claimed same as his individual property. Plaintiff testified positively that each paid his half of the purchase price of the lot, and that the partnership afterwards paid each of them back. The deed to the lot was delivered and recorded on January 17, 1903. Plaintiff alleged and testified that no partnership existed at that time, but that same was formed on February 14, 1903.

[1] The fact that defendant used firm funds to pay a debt incurred by him to secure money to pay for half the lot would not give the partnership any claim upon the lot, and under plaintiff's pleading the court was correct in assuming that under any theory which might be advanced defendant was at least entitled to a half interest in the lot.

[2] Now, as to the other half, each of the parties claimed he paid for it out of his individual means. The legal title being in defendant, the court was correct in placing the burden of proof on plaintiff to ingraft a trust upon such title. Baylor v. Hopf, 81 Tex. 641, 17 S. W. 230.

The charge precluded plaintiff from recovering unless the jury found he had paid half of the purchase money individually. Appellant argues that the allegation that plaintiff paid half of the purchase money out of his individual property was an unnecessary allegation, and that the real issue was whether the property was bought for the partnership, and whether the deed was to be taken in the partnership name and the property used for partnership purposes, and that whatever money defendant invested he would be entitled to recover from the firm upon an accounting.

[3] Plaintiff having made the specific issue and testified that he paid half the purchase money individually, we fail to see how the court could ignore such issue without subjecting the charge to just criticism. Had he instructed the jury to find for defendant unless they found that an agreement had been made to buy the property for the partnership, etc., he would have had to instruct the jury that half was paid out of defendant's individual property, and to require a finding whether plaintiff paid for the other half out of his individual property or whether such half was paid for by defendant out of his individual property. Unless the jury determined this question, they would not know how to arrive at a settlement between the partners. However, for the court to even submit the question of the other half being paid for with individual funds of defendant would have constituted an intimation that the court considered it doubtful whether the evidence sustained plaintiff's positive allegation that he paid such half out of his in-

dividual funds. Under the contradictory allegations of the petition, we conclude the court had the right to submit the allegation that plaintiff paid half out of his individual means as being the most specific claim asserted, and that plaintiff cannot be heard to complain of this portion of the charge.

[4] The second assignment reads as follows: "The court erred, at the instance of appellee, in charging the jury in relation to the ownership of the Becker lot, as follows: 'You will therefore find by your verdict that this lot is the individual property of the defendant, Louis Hengy, unless you believe from the evidence that at the time of the purchase of said lot by defendant he bought it for the partnership of F. J. Hengy & Son.' And also as follows: 'You are charged that, as between partners, when one partner draws money out of the firm for his individual use, then the property purchased with said partnership money is not the property of the firm, but that it is the property of the individual partner so purchasing it, and he should be charged with said money so drawn out in a settlement of the partnership business or accounts'—in that, as a matter of law, if said lot was bought with partnership funds for F. J. Hengy & Son, said partnership would have a resulting trust interest therein, and the dominant or superior title thereto and said lot would therefore belong to said partnership. And the great preponderance of evidence in this case shows that said lot was bought and paid for out of the partnership funds of said firm, without the knowledge or consent of appellant; that is to say, appellee, in the absence of appellant from the state, from time to time drew out of the partnership funds $2,817, and placed the same to his personal credit in the National Bank of Commerce, and with $2,530 of said money paid for said lot. Said latter charge is erroneous in that the appellant during practically the three years of the existence of said partnership, and at the time of the purchase of said lot, was absent from the state of Texas, and appellee had exclusive management and control of the business, and said purchase of said lot having been made with the partnership funds, and the rents and expenses thereof having been paid in and charged to the fund belonging to it, and in that said charges precluded the jury from rendering any other verdict than that the Bessard and Becker lots belonged to defendant, and in that, assuming that said lot belonged to appellee and was purchased by borrowed money from the firm, said charge is defective in omitting to charge appellee with interest on said money from the date he borrowed same, as will more fully appear from the court's charge and the pleading and evidence in this case."

Appellant contends that the charge is affirmatively erroneous in precluding plaintiff from any share in the Becker lot unless the same was bought for the partnership. This contention is correct. The charge announces the correct rule if a partner purchases property for himself with partnership funds with the knowledge and consent of his partner, but a different rule applies where he acts in bad faith and uses the firm money without the knowledge and consent of his partner.

The following rule is quoted in Cyc. vol. 30, p. 429, note 28, as announced in Hunt v. Benson, 2 Humph. (Tenn.) 459: "Where a partner withdraws the funds of the firm, and applies them to the purchase of realty, taking title in his own name, and for his own benefit, without the consent of his copartners, such realty will be deemed in equity partnership property for the payment of the debts of the partnership." We have been unable to procure this case, but the above doctrine meets our approval. "The partners owe to each other the most scrupulous good faith." Bates on Partnership, vol. 1, § 303. We are of the opinion that when a partner has purchased real estate with partnership assets, but in his own name, without the knowledge or consent of his copartner, and reports it to his copartner as firm property directly, or indirectly, by crediting the firm with rents and charging it with taxes and insurance, he cannot afterwards be heard to deny that the property purchased is in fact partnership property; nor would it be necessary that the property so purchased be used for partnership purposes.

[5] As the charge required a finding for defendant unless they found certain facts to exist, a special charge providing for a finding for plaintiff upon other facts would have been contradictory of the charge complained of. The charge therefore was affirmatively erroneous. Gibson & Cunningham v. Purifoy, 56 Tex. Civ. App. 379, 120 S. W. 1047; Eppstein v. Thomas, 16 Tex. Civ. App. 619, 44 S. W. 893; Chamblee v. Tarbox, 27 Tex. 147, 84 Am. Dec. 614; Boettler v. Tumlinson, 77 S. W. 826; Johnston v. Johnston, 67 S. W. 123; Thompson v. Railway, 48 Tex. Civ. App. 284, 106 S. W. 913; Building Co. v. Jones, 94 Tex. 500, 62 S. W. 741; Scott v. Railway Co., 93 Tex. 621, 57 S. W. 801; Sauer v. Veltmann, 149 S. W. 706. The assignment is therefore sustained.

[6] The third assignment complains of the following portion of the court's charge: "The court erred, at the instance of the appellee, in charging the jury as follows: 'If you find from the evidence that plaintiff knew of the condemnation proceedings by the Missouri, Kansas & Texas Railway Company against the defendant and his wife for a part of the Bessard lot and a part of the Becker lot, and plaintiff had an opportunity to set up and claim his rights and interest in said lots, which he now claims in this suit, and he did not set up and claim any right or interest in said lots, in said condemnation proceedings, then these facts are circumstances

which the jury may consider in determining whether said lots are partnership property or not'—in that said charge was applicable to no issue of fact, and in that said charge is upon the weight of the evidence, and in that said charge gave undue prominence to the fact therein referred to, even if true, by singling out from amongst all other facts in this case that one fact and charging the jury and placed undue stress thereupon, and in that it appears from the evidence the suit referred to in said charge was by the Missouri, Kansas & Texas Railway Company dismissed and another suit brought- by said company not only against appellee and his wife, but also against appellant, alleging all of them to be the owners of said lots, and in that said charge, as a matter of law, is erroneous as appellant was not called upon, although he may have had an opportunity so to do to set up and claim his rights and interest in said lots in said condemnation proceedings as the tribunal in which the same pended had no jurisdiction to determine the respective rights of appellant and appellee to the title to said lots, or either of them, and in that the mere silence or inactivity of a person, unless called upon to speak or act with reference to his property rights, are not per se any evidence whatever as to whether said property belonged to him or not, or to said partnership or not, as charged by the court, and in that said charge strongly tended to induce and persuade the jury in passing upon other issues in this case, especially as to the title to said lots, and the $2,500 damages awarded against the railroad company, and to ignore all of the evidence as to the partnership ownership thereof, and to award the same to appellee, and to otherwise discredit all of the evidence and all other contentions of appellant in this case, as will more fully appear from the court's charge and the pleading and evidence."

No contention is made that the facts mentioned in the charge, if found to exist, would estop plaintiff from setting up his claim to the lots, nor does the court so charge, but instructs the jury to consider such evidence. It is improper for the court to single out a portion of the evidence and instruct the jury to consider same, because it gives undue prominence thereto, and is calculated to lead the jury to believe that the court considers it of special weight. Dupree & McCutchan v. Railway Co., 96 S. W. 647; Western Union Tel. Co. v. Campbell, 41 Tex. Civ. App. 204, 91 S. W. 316; Western Union Co. v. Burgess, 56 S. W. 237; Mitchell v. Mitchell, 80 Tex. 101, 15 S. W. 705; Railway v. Kutac, 76 Tex. 478, 13 S. W. 327; Louisiana & Texas Lumber Co. v. Stewart, 148 S. W. 1193. The assignment is sustained.

[7] The fourth assignment complains of the following charge, given at the request of appellee: "The court erred, at the instance of appellee, in charging the jury as follows:

'You are instructed that, if the judgments of the justice court and the (county) court of Dallas county, in evidence before you, have established the right of the defendant, Louis Hengy, to the possession of the lots known as the Bessard lot and the Becker lot, no verdict for any rents against him can be rendered by you'—in that judgments in a justice court involving the mere question of possession of lots, the question of title, and rent incident thereto, could not and were not involved, nor were said judgments in evidence as to who owned the same, and did not and could not operate to prevent the party having title to said lots from suing for the recovery of said lots, and in connection therewith, as a matter of course, the rents due thereon; it appearing from the undisputed evidence that the appellee had collected and appropriated to his own use and benefit, in the way of rents from said lots, over $2,000, which, under the above charge, the jury was absolutely precluded from considering and awarding to said partnership in the event it found from the evidence that said lots or either of them belonged to said partnership, and in that said cases in the justice court did not involve the rights of F. J. Hengy & Son, but were between Louis Hengy on the one side and F. J. Hengy on the other, as individuals, and could not in any wise preclude said partnership of any of its rights either to said lots or the rent thereof, as will more fully appear from the court's charge and the pleading and evidence in this case."

It appears that appellee sued appellant for $76.90 rent for Becker lot for several months, and recovered judgment for the amount. Said judgment was conclusive between the parties as to the rents for the period covered by the suit. The other cases were all forcible entry and detainer cases, in which character of cases a judgment does not settle anything concerning rents. It merely disposes of the right of possession, and the peaceable possession is sufficient basis for recovery; but it does not preclude the other party from going into the district court and litigating the title and in connection therewith suing for rents or mesne profits. Articles 2529 and 2542, Anno Civ. Statutes (Sayles); House v. Reavis, 89 Tex. 634, 35 S. W. 1063. The only exception permitting a suit for rents in connection with one for forcible entry and detainer was made by the Thirty-Second Legislature in favor of landlords as against their tenants, where the rents claimed are in such amount as the justice court would have jurisdiction of. See chapter 21, Acts 32d Leg. The assignment is sustained.

[8] The fifth assignment is as follows: "The court erred in refusing to admit in evidence the personal bank account of the appellee for the years 1899 and 1900, down to June 30, 1902, in that appellee had testified that he paid out of his personal funds $1,000 as purchase money on the Bessard lot, and that part of said $1,000 was money he

brought from Denison in 1899, and then deposited in the American National Bank of Dallas, to his personal credit; but his bank account, offered in evidence as aforesaid, showed that he made no such deposit during the year 1899, and made none until May, 1900, and then only in the sum of $15. The court's only reason for rejecting said evidence was that the judgment of June 30, 1902, precluded any investigation into the appellee's or appellant's or partnership account anterior thereto, whereas in law said judgment related alone to a settlement and the status of said partnership down to June 30, 1902, and had absolutely nothing to do with and in no wise interfered with an inquiry into where and when and how the appellee got the $1,000 which he claimed to have paid out of his personal money on the purchase price of said Bessard lot. Appellant denies that appellee paid any part of the purchase money on said lot out of his personal funds and contended that all of the purchase money came out of the partnership funds."

This assignment is sustained. This testimony was clearly admissible for the purpose for which offered.

[9, 10] The sixth assignment complains of the admission, over appellant's objection, of a letter from him to appellee, dated March 24, 1905, in which he gave a list of his properties in Idaho, with their values, showing that he had $26,675 worth of property in Idaho.

We fail to see the relevancy of this evidence. It certainly is not relevant for the the purpose of showing (as contended by appellee) what money F. J. Hengy took with him to Idaho, or what had been sent him. It could only show that appellant had considerable property at the time the letter was written, and was prejudicial, in that it was calculated to impress the jury with the idea that appellant could well afford to be generous to his son and let him have what he claimed. M., K. & T. Ry. v. Hannig, 91 Tex. 347, 43 S. W. 508; Railway v. Levy, 59 Tex. 542, 46 Am. Rep. 269; 13 Cyc. 211. We sustain the assignment.

[11] The seventh assignment is as follows: "The court erred in refusing to submit appellant's special issues 1 and 2, relating to how many partnerships existed between appellant and appellee and the date of the beginning and end of the same, and in refusing and failing to submit in its general charge the law applicable to the formation and dissolution of the partnership, in that the evidence discloses, and appellant contended, that the first partnership was dissolved by operation of law and by agreement on June 30, 1902, and the second partnership was formed on February 14, 1903, and that between June 30, 1902, and February 14, 1903, the business of said concern belonged to appellant, and that the $3,000 or $4,000 drawn by appellant out of said business during said time belonged personally to him, and not, as

claimed by appellee, to both of them jointly."

The only allusion in the charge to the matter of dissolution of the partnership formed June 30, 1902, is the following: "The jury is instructed that the partnership adjudged to exist between plaintiff and defendant by the judgments of June 30, 1902, and July 31, 1902, is presumed to exist and continue until the dissolution which took place in February, 1906, unless the jury believe from the evidence that the same was dissolved by the parties, after the rendition of said judgments, and before the dissolution in February, 1906."

[12] The court having decided not to submit the case on special issues, no error was committed in refusing to submit the two special issues requested by appellant. Appellant should have requested the submission of special charges. The trial court should not undertake to present a case to the jury so that their verdict might be part general and part special. Articles 1328 and 1333 (Sayles' Statutes); Southerland v. Railway Co., 40 S. W. 193. However, it is earnestly contended that the failure to instruct the jury on the issue made by the pleadings with regard to whether the old partnership was dissolved and a new one formed on February 14, 1903, was an error so intense that the court should reverse without a special instruction being asked; appellant's theory being that the charge does not fairly cover the substantial issues in the case. The auditor's report embraces two findings, varying greatly in amount; one based on the theory that the accounting began June 30, 1902, and the other on the theory that it began February 14, 1903. It was therefore important for the jury to determine when the partnership began, and the instruction given by the court was inadequate in not submitting the specific issue made by the pleading and evidence, namely, whether plaintiff paid defendant $500 for his interest in the partnership; if so, then to find when the new partnership was formed, and to credit each partner with the amount paid in by him in property or money when the new partnership was begun, and also to credit plaintiff with the profits of the business during the time intervening between such dissolution and the formation of the new partnership, and credit defendant with the amount of his wages. However, we think the charge correct as far as it went, and think that plaintiff, if desirous of having a more specific submission of the issue, should have requested the submission of special charges.

The assignment is overruled.

The eighth assignment reads as follows: "The court erred, after having refused, at the instance of appellant, to submit this case on special issues, in submitting it on special charges, at the instance of the appellee, in that the trial of the cause consumed about 14 days, and in that the special charges upon the law as submitted failed to

apply all of the law applicable to the case, as, for instance, the statutes of limitation, what constituted a partnership purchase of land, in whole or in part, what constituted a loan from a partnership, and when the money borrowed by a partner bore interest and from what time, what operated as a dissolution of the partnership, what constituted a partnership, what constituted capital stock of the partnership and to whom it belonged, what constituted fraudulent appropriation by one partner of funds of a partnership, and other law applicable to other issues rising under the pleading and evidence in this case, as more fully appears from the charge of the court submitted to the jury, and from the evidence adduced on the trial of this case."

[13, 14] The charge recites that the court submits the case upon some special charges presented to him, but does not recite which side presented same, and proceeds to instruct the jury in a general charge embracing the issues covered, presumably, by the special charge. This recital could not possibly injure appellant. The omissions complained of by appellant should have been cured by offering special charges. The assignment is overruled.

[15] The ninth assignment complains of the refusal of appellant's request to submit the case on special issues. This is a matter left to the discretion of the trial court. Acts 1899, c. 111; Railway v. Jackson, 93 Tex. 262, 54 S. W. 1023; Edmondson v. Coughran, 138 S. W. 435; Jones v. Creech, 108 S. W. 975; Kampmann v. Rothwell, 107 S. W. 120.

[16] The tenth assignment complains of the overruling of exceptions to the auditor's report and the overruling of the motion to strike same out. The assignment is not submitted as a proposition, and for that matter involves quite a number of propositions, so we will consider the only proposition submitted under the same, viz., that the auditor's report, merely submitting three different theories under which the partners would be entitled to different amounts, is not a report within the contemplation of law. The pleadings raised the issues of different dates upon which the partnership began. The amounts with which the partners should be credited and charged depended upon when the partnership began. As the auditor had no right to pass upon the question of when the partnership began, it was proper for him to make findings based upon each date. The assignment is overruled.

In view of another trial, assignments 11 and 12 will not be considered, as they relate to the sufficiency of the evidence to sustain the verdict.

On account of the errors mentioned, the judgment is reversed, and the cause remanded.