HARTT v. YTURRIA CATTLE CO. et al.*
(No. 8927.)

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 7, 1918. Rehearing Denied Jan. 18, 1919.)

1. EVIDENCE ☞139—FAILURE OF GUARANTY OF CATTLE SOLD—EVIDENCE OF CUSTOM.

Where defendant cattle company pleaded 'over against defendant commission company for judgment in case it was held liable for failure of commission company's guaranty that cattle sold were immune from tick fever, evidence was admissible, as between them, as to the existence or otherwise of a custom among commission companies at the place of sale to make such representations or guaranties.

2. EVIDENCE ☞139—AUTHORITY OF AGENT— CUSTOMS AND USAGES.

In an action for failure of guaranty that cattle sold were immune from tick fever, brought against a seller and its agents, evidence of commission merchant's custom as to making such guaranties was admissible, not to enlarge the powers conferred by employer upon agent, but as a means of interpreting and ascertaining the powers actually conferred.

3. APPEAL AND ERROR ☞206(1)—OBJECTIONS IN LOWER COURT—RECEPTION OF EVIDENCE.

Where evidence was admissible for any purpose, and no request was made that it be limited to the purposes for which it was properly admissible, its admission cannot be held reversible error.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by W. E. Hartt against the Yturria Cattle Company and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Templeton & Milam, of Ft. Worth, for appellant.

B. K. Goree and McLean, Scott & McLean, all of Ft. Worth, and Craig & Green, of Brownsville, for appellees.

BUCK, J. W. E. Hartt sued the Yturria Cattle Company, the George R. Barse Live Stock Commission Company, and Abraham Cohn for damages for breach of an alleged contract of guaranty. He alleged that the Yturria Cattle Company, hereinafter called the Cattle Company, shipped, from certain named counties in southwest Texas, a number of cattle to the George R. Barse Live Stock Commission Company, hereinafter called Commission Company, for sale on commission, and that the Commission Company was accustomed to selling such live stock as was sent to it through its agent and salesman, Abraham Cohn, "which fact was then and there well known to the Cattle Company." He further alleged that plaintiff also induced him to purchase certain of said cattle by the representations made by Cohn, to the effect that the cattle had come from a "ticky" country—that is, from a place infested with ticks —and that said cattle were safe to go any where, being immune from tick fever; that "in making such statements and representations said Cohn was then and there acting within the scope of his authority, or at least within the apparent scope of his authority," not only as the agent of the Commission Company, but also as the agent of the said Cattle Company. He further alleged that, induced by said representations, he bought 134 head of said cattle, shipping 90 of them to his ranch in Houston county, infested with ticks, and sold 34 head of the remainder to J. M. Dunning, who moved them to Hood county, where they were placed in a pasture infested with ticks. He further alleged that 65 head of the cattle shipped to Houston county contracted tick fever and died, and that 2 of the head shipped to Hood county died from such fever, and that as to these 2 head Dunning was making claims against plaintiff for their value. He claimed damages for the 67 head alleged to have died, and also for the depreciation in value of the remainder.

The Cattle Company answered by general demurrer and special exceptions, by general denial, and specially answered that it had made no representations to the Commission Company as to the cattle shipped it, nor had it authorized said Commission Company to make any such representations with reference to said cattle. It further answered that as a matter of truth and fact all of the cattle shipped by it came from pastures in which were constantly found ticks, and that said cattle had been exposed to ticks. It further denied that Abraham Cohn was its agent, or authorized to act for it in any capacity, or to bind it by any representations or acts. It further pleaded that if the Commission Company should be held to have made to the plaintiff the representations alleged, and that the Cattle Company should be held liable to plaintiff by reason thereof, that the Cattle Company have judgment over against the Commission Company and Cohn, jointly and severally, for any and all damages that the Cattle Company might be required to pay.

The defendant Commission Company answered by general demurrer and special exceptions and general denial, and further specially denied that either it or its agent, Cohn, made any representations whatsoever with reference to whether said cattle were ticky or non-ticky, either quarantined or non-quarantined, or whether said cattle were subject to tick fever or immune from it. It alleged that plaintiff or his representative, who acted for him as an inspector of said cattle, purchased said cattle through this defendant, acting as a commission company or as agent only. It was alleged that at the time plaintiff bought the cattle the same were confined by the stockyards company at Ft. Worth in "southern pens"; that is, in pens used for the purpose of keeping cattle coming from the southern portion of the state, where ticks were to be found. The defendant Cohn adopted the pleadings of his codefendant, the Commission Company.

The cause was submitted to a jury upon special issues, in answer to which the jury found:

(1) That in offering for sale and in selling to plaintiff's agent the cattle in controversy said Cohn did not represent that the cattle were safe to go to ticky territory, or to places infested with ticks, or that they were safe to go anywhere; nor did he represent that said cattle were immune from tick fever, or that he would guarantee them to be safe to go anywhere.

(2) That plaintiff, or his agent, in purchasing said cattle relied solely upon his own judgment and inspection.

(3) That the defendant Cohn, if he did make the alleged statements and representations as claimed by plaintiff, was not acting within the apparent scope of his authority as agent for the Commission Company, nor was he acting within the apparent scope of his authority as agent of the Cattle Company.

(4) That it was not the general custom and practice on the Ft. Worth market during the month in which these cattle were sold for commission men or their agents to make to prospective purchasers representations and guaranties such as plaintiff alleged were made by Cohn.

(5) That there were some ticks in the pasture from which the Cattle Company had shipped the cattle in question, but at the time of the sale of said cattle to plaintiff, or his agent at Ft. Worth, the cattle did not have ticks on them to any appreciable extent.

(6) That at the time Cohn sold the cattle to plaintiff, or his agent, Cohn was not informed by either of them that the cattle so purchased were to be taken to plaintiff's ranch in Houston county, or that said cattle were to go to a "ticky" country.

[1] Appellant's first and second assign-

ments are directed to the admission of a series of questions propounded to the defendant Cohn, and others of like import propounded to W. H. Barse, of the Commission Company. These questions and the answers thereto cover some seven or eight pages of the brief, and it would subserve no useful purpose to set them out in full. The essence of these assignments, as shown by the first, is that the court erred in admitting evidence as to the existence, or nonexistence, of a custom among the commission men at Ft. Worth to make such guaranties with regard to cattle sold by them as plaintiff alleged were made in this instance. For instance, certain of the questions asked the witness Barse were propounded by the attorney of the Cattle Company as follows:

"Q. I will ask you, Mr. Barse, whether or not it is the custom on this market for commission men to make such guaranties. A. It is not the custom.

"Q. Mr. Barse, did your company ever before make any such representations or guaranties? A. Never.

"Q. With reference to any of the Yturria cattle? A. No, sir.

"Q. I will ask you this question, Mr. Barse: Did you ever make any other representations or guaranties with reference to any cattle that the Yturria Cattle Company had theretofore shipped to you? A. No, sir; or any other cattle.

"Q. Did you ever authorize any agents of your company? A. No, sir.

"Q. To make such representations? A. No, sir.

"Q. Or guaranties? A. No, sir.

"Q. Did you ever make such representations or guaranties with reference to the cattle shipped to you by any one else? A. Never.

"Q. Mr. Barse is it the custom for the agents of the commission men to make such representations and guaranties? A. I never heard of such a custom; if it is, I don't know it.

"Q. Well, you would know? A. I would, I suppose.

"Q. If it existed, wouldn't you? A. Yes, sir."

There is authority holding that, where there exists a sharp conflict as to the issue of whether or not at the time of an accident the train causing the injury was running at a rate of speed in violation of a regulation, it is admissible to show that it was customary for defendant's trains to violate said regulation. See I. & G. N. Ry. Co. v. Kuehn, 2 Tex. Civ. App. 210, 218, 21 S. W. 58, 62. In the cited case the Court of Civil Appeals for the Austin District said:

"The customary rate of speed of the train at this place was pertinent, as it gave him the right to regulate his conduct by it. For the same reason, it was not error to allow proof that it was the habit of persons operating the trains not to ring the bell in passing this crossing. The evidence was admissible for the additional reason that it tended to prove that the bell was not rung on the occasion of the accident. There was a conflict in the testimony as to whether the bell was rung at the time or not. The testimony offered strengthened the probability that it was not rung. The fact was not a distinct collateral fact. In the case of Grand Trunk Railway Co. v. Richardson, 91 U. S. 454 [23 L. Ed. 356], the question was whether the company's locomotive caused a fire. Testimony was admitted, over objections, 'that, at various times during the summer before the fire occurred, defendant's locomotives scattered fire when going past the mill and bridge, without showing that either of those which the plaintiffs claimed communicated the fire were among the number, and without showing that the locomotives were similar in their make, state of repair, or management to those claimed to have caused the fire complained of.' Justice Strong, delivering the opinion, said: 'The question has often been considered by the courts in this country and England, and such has, we think, been generally admissible, as tending to prove the possibility, and the consequent probability, that some locomotive caused the fire, and as tending to show a negligent habit of the officers and agents of the railway company.' 1 Whart. Ev. §§ 40–43. If special acts are admissible to show a habit of negligence [in the handling of a dangerous agent], as decided in the foregoing case, the habit itself would undoubtedly be."

But, in any event, we think the Cattle Company, by reason of their plea over against the Commission Company, would have the right to show the existence of a custom among the commission companies at Ft. Worth, and especially as to the Barse Commission Company, not to make any representations or guaranties as to the character or quality of the cattle committed to them for sale. If this custom existed, the Cattle Company had the right to rely thereon, at least so far as concerned the issue between it and the Commission Company. In 12 Cyc. § 7, p. 1070, it is said:

"It is well settled that a mercantile agency must be executed in accordance with the usage of the particular trade or market to which it relates and the authority of the agent is regulated and controlled by the usage of the particular business to pledge his principal's goods or to sell on credit. So by usage an agent may have an implied power to delegate his authority, may be required to insure his principal's goods, may have authority to receive payment, or may set off his private debt against his principal's rights." Harbert v. Neill, 49 Tex. 143; Neill v. Billingsley, 49 Tex. 161.

Therefore we think, undoubtedly, the evidence objected to was admissible as between the Cattle Company and the Commission Company.

[2] Plaintiff alleged in his petition that in making the alleged representations Cohn was acting within the apparent scope of his authority as agent for the Cattle Company, as well as the Commission Company. In determining the question of the apparent authority

of an agent to do certain acts or to make certain representations, where the evidence shows that he had no express authority so to do, it is admissible to show what was the usage or custom of the trade or business in which the act was done or the representation made. Such evidence is not for the purpose of enlarging or circumscribing the powers of the agent, conferred by his employer, but as the means of interpreting and ascertaining those which had been actually conferred. See Reese v. Madlock, 27 Tex. 120, 84 Am. Dec. 611; Telegraph & Telephone Co. v. Dale, 27 S. W. 1059; Brennan & Son v. Dansby et al., 43 Tex. Civ. App. 7, 95 S. W. 700.

[3] No request was made by appellant to have the testimony objected to limited to the issue between the two defendants named. The court admitted the testimony, as shown by appellant's bill of exception, as bearing upon the issue of apparent authority. If the evidence was admissible for any purpose, and no request was made that it be limited to the purpose for which it was properly admissible, such admission cannot be held to be reversible error. See H. & T. C. Ry. Co. v. Poole, 63 Tex. 246; Walker v. Brown, 66 Tex. 556, 1 S. W. 797; Ry. Co. v. George, 85 Tex. 150, 19 S. W. 1036; Brin v. McGregor, 64 S. W. 78; Ft. W. & D. Ry. Co. v. Harlan, 62 S. W. 971; Railway Co. v. Jackson, 53 S. W. 81; s. c. 93 Tex. 262, 54 S. W. 1023; Keowne v. Love, 65 Tex. 152. Therefore we overrule assignments 1 and 2.

We think what we have said in discussing assignments 1 and 2 disposes of the questions presented in assignments 3, 4, and 5. Since plaintiff had charged that the acts and representations alleged to have been done and made by Cohn were within the apparent scope of his authority as agent of both other defendants. it was proper to submit to the jury the issue as to whether said statements and representations alleged to have been made were, if Cohn did make them, within the apparent scope of his authority as agent of the two other defendants.

Under the fifth assignment complaint is made of the definition given by the court of "apparent scope of authority," and also of the submission of question No. 4, divided into paragraphs (a) and (b). We do not think the criticism of the definition given is well grounded, nor that the objections to the submission of the questions mentioned are well taken. The jury having found, upon evidence which we hold was admissible, that Cohn made no such representations, as claimed by plaintiff, as to the immunity of the cattle from tick fever, we do not think that there is any merit in those assignments and the propositions thereunder that the appellees Cattle Company and Commission Company were put upon an election either to assume the burden of Cohn's unauthorized act, if any,

or to disown said act and return the consideration paid for the cattle.

All assignments are overruled, and the judgment is affirmed.

⚖⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes