LEVI JONES, Appellant, vs. THE WIDOW AND HEIRS OF JOSEPH
McCOY, Appellees — Appeal from Gonzales County.

The competency of a witness is always a question for the court, and his credibility for the jury.

As the credibility of a witness must be judged of by the jury, any evidence which tends to affect it is competent.

Though an interest in the question merely does not affect the competency of the witness, yet it may be shown to enable the jury the better to judge of his credibility.

A civil disability, of a character to disfranchise and deprive a party of his most sacred rights, ought to be established clearly and conclusively, and not left to mere implication, argument and inference.

The appellees filed in the district court two petitions; the first on the 29th, and the other on the 30th of August, 1844. To the first Levi Jones was made defendant, and the legal representatives of Peter W. Grayson were made defendants to the other. Both suits seem to have had in view the same object — the rescission of a contract of sale of a league of land — and they were subsequently consolidated by order of court and proceeded as one suit.

The following seems to have been intended by the plaintiffs as the substantive averments of their petitions, in which they undertake to set forth the facts on which they rely for a rescission of the contract in question. In both petitions they are the same with scarcely a variation, viz.: That the deceased, Joseph McCoy, in his lifetime, obtained from the Mexican government a league of land in the county of Gonzales; that on the 17th day of April, 1836, when the deceased, McCoy, was driven from his home by the public enemy, the defendant, Levi Jones, representing himself as agent of Peter W. Grayson, obtained from McCoy a contract for the sale to him of his league of land; that as an inducement to the sale, Jones advanced to McCoy a thousand dollars in hand at the time, and that he gave his note payable at the house of Logan & Raguet, at Nacogdoches, for sixteen hundred and twenty-five dollars, one thousand of which was the residue of the purchase money

for the league of land in question; that this note was value-less; that McCoy executed to Jones a bond for title; that the plaintiff, Catharine, the then wife of McCoy, had ever been opposed to the contract, and expressly dissented at the time of its execution. There are various allegations of fraudulent intent not deemed by the court material.

Upon these allegations, the plaintiffs pray that Jones be divested of all interest and title to the premises, and that the right and title be vested in them; and they proffer to release to the defendant his note for the residue of the purchase money. They further pray that the legal representatives of Grayson be also made defendants; that they be required to produce the original grant to McCoy and his bond for title to Grayson, and that the latter be cancelled and annulled.

The plaintiffs filed their petition under oath, and called upon the defendants to answer.

At the spring term, 1845, the defendant, Jones, answered. His answer admits and exhibits the contract and McCoy's receipt for $1,000 of the purchase money. It alleges that, before the maturity of the note described in the petition, the defendant went to Nacogdoches, the place appointed for payment, for the purpose of paying the residue of the purchase money, and receiving his title to the land, but that McCoy had departed this life, and there was there no one authorized to make title; that he then was, and ever has been, ready and willing to pay the residue of the purchase money whenever a title should be made him in compliance with his contract; that he has requested the representatives of McCoy to make title, which they have refused to do. It contains the further allegation that, "although the name of Peter W. Grayson was used in said contract simply as the transferee of the title from said McCoy, deceased, because he was at the time a friend of this respondent, and a naturalized citizen of the republic, yet in fact said Grayson had no further interest in the contract or property than to hold it as trustee" for the defendant and one Albert T. Burnley. The defendant prays that the plaintiffs be decreed to make title

according to the terms or stipulations of the contract of their intestate, and, that the executors of Grayson be required to answer touching the interest of their testator, etc.

The contract, as set forth, bears date on the 17th day of April, 1836. It purports to have been entered into "between Joseph McCoy of the municipality of Gonzales of the one part, and Peter W. Grayson of the municipality of Brazoria, by his agent and attorney in fact, Levi Jones, of the other part." It recites that "the said McCoy has this day sold to Grayson one league of land" (describing it, and referring to the original grant therewith delivered); the payment of one thousand dollars of the purchase money, and the promissory note of Jones for the residue, "payable sixty days after date, or so soon thereafter as a good and indefeasible title for the said land is made;" and it stipulates for the conveyance upon the payment of this residue of the purchase money.

This contract is executed by Joseph McCoy on the one part, and Peter W. Grayson, by his attorney in fact, Levi Jones, on the other part; and is witnessed by A. G. Perry, A. W. Moore and Benjamin Cochran.

The executors of Grayson subsequently answered, admitting the truth of the answer of Jones, and disclaiming any interest in their testator, Grayson.

On the —— day of ——, 184–, the plaintiffs filed a writing, which they denominate their answer to the cross-bill of the defendant, in which they allege that they were ignorant that the defendant, Jones, or Burnley, had any interest or claim to the land in question, but that not wishing to dispute the sworn answer of the defendant, they "are willing to admit that said Jones and Burnley were incapable of holding in their names a title to lands in Texas." They allege that the plaintiff, Catharine, had administered on the estate of her deceased husband, in March, 1837; that in consequence of the failure to pay punctually the whole of the purchase money, the plaintiffs had lost the opportunity of making advantageous purchases. They prefer to restore the note given by Jones for the residue of the

purchase money, and the thousand dollars previously paid, with interest. They further allege, that, at the time of making the contract in question, McCoy was suffering under the effects of a disease which occasioned a loss of his reason, and of which he shortly after died, and that the contract was therefore void. They deny that the defendant, Jones, has paid or tendered the residue of the purchase money, and conclude with a repetition of their former prayer, that the contract be cancelled, etc.

At the spring term, 1848, there was a trial, and a general verdict for the plaintiffs, upon which the court proceeded to decree that the plaintiffs refund to the defendant the thousand dollars received by their intestate, with interest at five per cent.; that the note given for the residue of the purchase money be cancelled, and that the contract of sale be also cancelled and annulled.

It appears that, at the trial, the principal witness for the plaintiffs, Elizabeth McCoy, was asked by counsel for the defendant, a question tending to showing her interested in the question at issue, and that she declined to answer, and the court refused to require an answer. Another witness was asked by the plaintiffs' counsel, the present value of the lands in controversy. To this question the defendant objected, but the court overruled the objection.

The statement of facts gives at length the testimony of the witnesses, which, however, it is unnecessary here to recapitulate. But two witnesses were introduced by the plaintiffs in support of their averments, and but one of them testified to any fact considered by the court material, as conducing in any way to impeach the contract sought to be rescinded. That witness, Elizabeth McCoy, testified, in substance, that McCoy died at the residence of Henry Masters, about twenty miles this side (west) of the Neches, in June, 1836, when retreating with his family from the public enemy; that his death occurred about the middle of June; that he was sick about two months, and confined about one month before his death, of a disease in his

head; that for twenty days or a month before his death, he was deprived of his reason; that she (the witness) was at the camp of McCoy, upon the Trinity, when Jones came there; that it was not thought by persons acquainted with McCoy that he was in a state of mind to enable him to transact business. She was not present when any written contract was executed.

The defendant introduced evidence, by the testimony of several witnesses, for the purpose of showing a readiness and proffer to comply with his contract on his part, and the want of readiness and refusal by the plaintiffs to accept performance by him, or to perform on their part the contract of their ancestor; the adequacy of the price paid, and contracted to be paid for the land at the time of the sale; and the entire absence of any fraud or unfairness in the transaction; also the residence of the defendant in Texas from 1835 down to the time of the trial.

The defendant moved for a new trial, assigning for causes that the court erred in the admission of evidence, and that the verdict was contrary to law and evidence. The motion was overruled, and the defendant appealed.

PHILLIPS, ALLEN and ALEXANDER for appellant.

NEILL and ROBINSON for appellees.

Mr. Justice WHEELER, after stating the facts of the case, delivered the opinion of the court.

The consideration of the questions presented by the record before us will relate to,

1. The ruling of the court in respect to the admission of evidence..

2. The sufficiency of the evidence to support the verdict.

1. The question propounded to the witness, McCoy, was, we think, a proper question, and one which the witness ought to have been required to answer, as going, not to the competency, but to the credibility of the witness. The competency of a witness is always a question for the court, and his credibility for the jury. [5 Mass. R. 219, 229; 17 id. 160, 169.] And as the credibility of the witness must be judged of by the jury, any evidence which tends to affect it is competent. [9 Watts

& Serg. 54.] Though an interest in the question merely does not affect the competency of the witness, yet it may be shown to enable the jury the better to judge of his credibility.

There was also manifest error in the ruling of the court in admitting evidence of the present value of the land. That was not in issue. It was an inquiry wholly foreign to the questions proper for the consideration of the jury, and was well calculated to divert their attention from the real inquiry, and to lead them to attach consequence, and devote attention, to a matter not proper for their consideration. The evidence was most clearly illegal, and ought to have been excluded.

2. The question of the sufficiency of the evidence to support the verdict must depend upon its adequacy to establish the fact of insanity, alleged in the amended petition; that being the only averment affecting the validity of the contract.

The original petition contains no averment which, if true, could afford a legal ground on which to base a rescission of the contract. There can be no pretense that the facts set forth, of the retreat of McCoy with his family before the public enemy, the advance to him of the $1,000, as an inducement to the sale, or the dissatisfaction of his wife, one or all of them could warrant a rescission of the contract. And these are the grounds on which its rescission was originally sought! It would indeed be novel to annul a party's most solemn and justly obligatory contract for causes such as these. It is alone to the proof in support of the averment in the amended petition, respecting the mental alienation of McCoy, that we need look, that being the only averment, touching the validity of the contract, at all worthy of notice.

To say nothing of the singular circumstance that this all-important fact, the alleged incapacity of McCoy to contract, seems to have been forgotten, and not thought of at the time of the commencement of the suit, and was never set up until more than two years afterwards; which, unexplained, must certainly detract very much from its credibility, and cast upon it a degree of doubt and distrust demanding the most convincing proof; it is enough to determine the present inquiry, that the

evidence in support of this averment is altogether unsatisfactory, and quite too vague and indefinite to base the conclusion upon sought to be drawn from it. It rests upon the testimony of a single witness, who gives her own conclusion and opinion respecting the mental state of McCoy, but states no facts or circumstances in support of that opinion. She does not assert that McCoy was actually laboring under mental alienation until some twenty days or a month before his death, which, from her own testimony, occurred some two months after the making of the contract; thus fixing the period of this mental alienation subsequent to the time of its execution. And this was the only evidence at all material in support of the plaintiffs' case. Although it appears from the testimony of this witness that there were other persons present, particularly Perry and Moore, whose names appear also as witnesses to the contract, and whose testimony, under the circumstances, would seem to have been most satisfactory, yet they are not called to testify touching this most material averment, so vital to the plaintiffs' case, and no attempt is made to account for their absence. Nor was there any attempt or offer on the part of the plaintiffs to support the testimony of this one witness by the proof of any corroborating circumstances.

Without adverting to every aspect in which this subject might be viewed, or pursuing the reflections which its consideration must suggest, we recur to the question, is it possible to regard the verdict of the jury, based upon this vague and unsatisfactory testimony, under the circumstances, as resting on a legal basis? And we are constrained to conclude that it is not. If upon evidence such as this, and under the circumstances of this case, a contract of the most solemn and binding character, apparently executed with due deliberation and formality, and the strictest regard to justice and fair dealing, could be set aside and annulled, and a party divested of his most valued rights, the law, instead of affording a shield and protection, would become the instrument most effectually to defeat and destroy rights, however fairly acquired or justly possessed. It is scarcely possible to regard the verdict in this case otherwise

than as the result of partiality or prejudice, induced by con-
siderations which have no proper place in the adjudication of
civil rights.

But it is insisted that the judgment ought to be affirmed, be-
cause, it is said, Jones was an alien, and could take nothing by
his contract.  And this assumption of the alienage of the de-
fendant is based upon his statement, in his answer, that the
contract was made by him in the name of Grayson, for the
reason that the latter was his friend, and a naturalized citizen
of the state.  From this statement, it is inferred and assumed
in argument that Jones was an alien.  But it is nowhere averred
or admitted in the record that such was the fact.  On the con-
trary, there is evidence from which the conclusion is nearly
irresistible, that he must have been here at the date of the dec-
laration of independence; and though, perhaps, not aware, at
the time of making the contract, that he was invested by the
constitution with the rights of citizenship, yet it can scarcely
admit of a doubt that such must have been the fact.  The
plaintiffs nowhere aver that the defendant was an alien.  In
their amended petition they allude to his statement in his an-
swer respecting the friendship and citizenship of Grayson, and
draw from it the conclusion that he has admitted that he could
not hold land in Texas; but they do not state the ground of this
supposed disability, or ascribe it to, or charge the fact of alien-
age.  It is only by implication and inference that this conclu-
sion can be arrived at, and it is not a *necessary* inference from
anything contained in the record.  On the contrary, a view of
the whole record must, we think, lead to the opposite conclusion.

But we do not deem it necessary to enter into a minute ex-
amination of the record for the purpose of weighing the prob-
abilities respecting this question.  We do not think the ground
made out.  A civil disability of a character to disfranchise and
deprive a party of his most sacred rights, ought, we think, to
be established clearly and conclusively, and not left to mere
implication, argument and inference.  It ought at least to be
distinctly alleged, so as to afford the party an opportunity of
being heard before he is disfranchised.  In this record there is

neither averment nor proof that the defendant, Jones, at the date of the contract, was an alien to the government and laws of this country, and nothing to afford more than a mere suspicion that such may have been the case; and even that is subsequently repelled. Until the fact of alienage shall have been established, it will not become necessary to consider what would have been its effect if proved in a case like the present.

It is unnecessary to consider the questions, discussed so much at length at the bar, on behalf of the appellees, which seem to us to have no proper application to the pleadings or evidence in the case.

We are of opinion that there was error in the ruling of the court respecting the admissibility of evidence, and in refusing the application for a new trial, and that the judgment, therefore, be reversed, and the cause remanded for further proceedings.