PERDUE v. PERDUE et al. (No. 2026.)*

(Court of Civil Appeals of Texas. Texarkana. Dec. 20, 1918. Rehearing Denied Jan. 2, 1919.)

1. COURTS ⬤═202(2)—PROBATE COURTS—PROCEDURE.

In probate matters originating in the county court there is less strictness required in pleading than is common in suits of law in the same court or in the district court, especially where averments whose sufficiency is questioned relate to matters which opposite parties must affirmatively establish.

2. WILLS ⬤═277—PROBATE—OBJECTIONS TO PROBATE—PLEADING REVOCATION.

In view of Rev. Civ. St. art. 3271, making it incumbent upon proponent to prove that will has not been revoked, allegation by contestant in proceedings to probate unproduced will under article 3272 that testator, "while sane, executed the will alleged by proponent, that afterwards, while sane, he revoked the same," held objec-

tionable as not specific as to manner in which will was revoked.

3. WILLS ⬤═322—PROBATE—PROCEEDINGS—EXAMINATION OF WITNESSES.

It is court's duty in proceeding to probate a will, whether contested or not, to elicit from witnesses, when deemed necessary, any material facts bearing upon issues to be determined.

4. WITNESSES ⬤═131—TRANSACTION WITH DECEASED—"SUIT."

A contested application to probate a will is a "suit" within Rev. Civ. St. art. 3690, prohibiting an interested party in suit by the heirs and executors from testifying as to any transaction with or statements by testator, unless called by opposite party.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Suit.]

5. WITNESSES ⬤═139(9) — COMPETENCY — TRANSACTION WITH DECEASED—"INTERESTED PARTY."

An heir is an "interested party" within Rev. Civ. St. art. 3690, prohibiting an "interested party" in suit between heirs and executor from testifying as to any transaction with or statements by testator, unless called by opposite party, although he did not actively participate in the will contest by joining in the pleadings.

6. WILLS ⬤═423 — CONCLUSIVENESS OF PROBATE—HEIR.

A judgment in will contest is conclusive as to rights of heir, although heir did not actively participate in the contest by joining in the pleadings.

7. WITNESSES ⬤═159(3) — COMPETENCY — "TRANSACTION WITH DECEASED."

In will contest involving question of whether testator revoked will, testimony of an heir that testator directed witness to get will, and after having so done testator tore will in two and told witness to light match, and then held papers over flame in the hands of witness until they were consumed, was incompetent, being as to a transaction with deceased within Rev. Civ. St. art. 3690.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Transaction.]

8. WILLS ⬤═423 — PROBATE — "PROCEEDINGS IN REM."

Proceeding by which wills are proved for record and established as muniments of title are actions in rem, and judgments rendered therein are binding upon every one.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Proceeding in Rem.]

9. WITNESSES ⬤═178(4)—TRANSACTION WITH DECEASED.

Under Rev. Civ. St. art. 3690, prohibiting testimony of interested party as to transaction by deceased in suit between heirs and executor, unless called by opposite party, proponent having called heir as witness in county court to testify as to transaction with deceased, the testimony reduced to writing under articles 3273–3275 was competent in district court.

---

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

10. APPEAL AND ERROR ⟨⟨∞⟩⟩232(2)—OBJECTION
—WAIVER.

Ground of objection to evidence not urged in lower court is not available on appeal.

Appeal from District Court, Bowie County; H. F. O'Neal, Judge.

Proceedings to probate a will by J. S. Perdue, contested by Queen A. Perdue and others. Judgment of county court for contestants affirmed by district court, and proponent appeals. Affirmed.

Turner, Graham & Smiths, of Texarkana, for appellant.

Mahaffey, Keeney & Dalby and Wheeler & Wheeler, all of Texarkana, W. T. Williams, of Angleton, and S. F. Caldwell, of Mt. Pleasant, for appellees.

HODGES, J. In April, 1916, T. J. Crawford, now deceased, made a written will in which he devised all of his property that remained after the payment of his debts and funeral expenses to his nephew, J. S. Perdue, the appellant in this suit. By the terms of the will Perdue was appointed independent executor without bond. After its formal execution the will was delivered into the possession of Perdue, who retained it until some time during the following month, when it was delivered by him to F. A. Crawford, a brother of the deceased testator. At the time Perdue delivered the will he was paid by F. A. Crawford the sum of $250, a part of which was in cash, and the remainder a vendor's lien note. There is some conflict in the evidence as to whether this payment was made in consideration of services previously rendered by Perdue to decedent, or in satisfaction of Perdue's interest in the will. Immediately after this transaction F. A. Crawford moved his brother T. J. Crawford to the former's residence in Cass county, Tex. Some time during the month of June following T. J. Crawford died. He left no wife or child, but was survived by brothers and sisters and nephews and nieces who would have inherited an interest in his estate had he died intestate. In September, 1916, the appellant filed an application in the county court of Bowie county for the probate of the instrument executed by T. J. Crawford as his last will and testament. Being unable to produce the will, appellant proceeded under the provisions of article 3272 of the Revised Civil Statutes, which prescribes the manner for probating written wills which cannot be produced. The probate of this will was contested by the collateral relatives of the deceased and by Earl Harris, who claimed to be an adopted son of T. J. Crawford and his deceased wife. The principal ground urged in the contest was

that the will had been revoked. In the trial in the county court the appellant called as a witness F. A. Crawford, and elicited from him testimony of which the following is the substance: Witness resided in Cass county, Tex., and was a brother of T. J. Crawford, the deceased. The latter died at his house on the ——— day of June, 1916. He was there 24 days prior to his death. He was about 70 years of age. Approximately 10 days before the death of T. J. Crawford, at noon, the witness was sitting at his dinner table, when his son Asbury called to him from an adjoining room to come in there. He responded, and found his brother on a cot with three cuts on one side of his throat, and two on the other. All of the cuts were bleeding. A razor was lying on the organ. Asbury had taken it from the deceased. When witness entered the room he asked, addressing his brother, "What do you mean?" The latter said, "Death would be sweet; you told me you would not leave me." Witness did not know whether T. J. Crawford was trying to commit suicide or was testing his razor. That morning Asbury had, at the request of deceased, sharpened the razor and left it with him. On that same evening T. J. Crawford tore up his will. He asked witness what had become of the will and other papers. Witness replied that they were in witness' coat pocket in another room. Deceased directed witness to bring them to him. He was at the time lying on the cot near the fire. Deceased then tore them in two himself, and told witness to stick a match to them; and when they blazed deceased threw them into the fireplace. One of the papers torn up and destroyed was a will, and the other was what is called "adoption papers." T. J. Crawford's name was signed to that will, and his signature was witnessed by two of the Huckabees, whose initials witness did not remember.

This, together with other testimony, was reduced to writing and made a part of the record as required by statute. From an order by the county court refusing the probate of the will the proponent appealed to the district court. In the trial in the district court the following special issues were submitted to the jury:

"(1) Did T. J. Crawford in his lifetime destroy the will which the evidence shows that he executed in the presence of J. M. and J. E. Huckabee?

"(2) If you answer the foregoing question in the affirmative, then you are asked the following: Did T. J. Crawford at the time such will was destroyed possess testamentary capacity?

"(3) Did J. S. Perdue accept $150 in money and the vendor's lien note delivered to him by F. A. Crawford in full settlement and satisfaction of all his rights under the will executed by T. J. Crawford?"

⟨⟨∞⟩⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Each of these questions was answered in the affirmative, and upon those answers an order was entered refusing the probate of the will.

[1-3] Taking in their chronological order the rulings of the court complained of, we come first to a group of assignments which attack the action of the court in overruling appellant's exceptions to certain portions of the pleadings of the contestants. The latter had pleaded generally "that, if T. J. Crawford in his lifetime, and while sane, executed the will alleged by proponent, that afterwards, while sane, he revoked the same." This fact, if true, was a good defense, and the only purpose of the exceptions was to require the contestants to be more specific and state the manner in which the will was revoked. One who applies for the probate of a will has the burden of proving the following facts: (1) That the testator at the time of executing the will was at least 21 years of age, or was married, that he was of sound mind, and that he is dead; (2) that the court has jurisdiction of his estate; (3) that citation has been served and returned in the manner and for the length of time required by law; (4) that the testator executed the will with the formalities and solemnities and under the circumstances required by law to make it a valid will; (5) that such will has not been revoked by the testator. Rev. Civ. Stat. art. 3271. If the will be a written one and cannot be produced in court, the proponent must further prove the cause of its nonproduction, and such cause must be sufficient to satisfy the court that it cannot by any reasonable diligence be produced. Rev. Civ. Stat. art. 3272. While permitting the interested parties to appear and resist the probate of a will, the statute prescribes neither the form nor the essentials of a contest. In probate matters originating in the county court there is less strictness required than is common in suits of law in the same court or in the district court. Robinson v. Stuart, 73 Tex. 267, 11 S. W. 275. This is especially true when the averments whose sufficiency is questioned relate to matters which the opposite party must affirmatively establish. In view of the burden imposed by statute upon the proponent in this instance to prove that the will he sought to probate had not been revoked, we think the pleadings of the contestants were sufficiently specific. It is the duty of the court in proceedings to probate wills, whether contested or not, to elicit from witnesses brought before it, when deemed necessary, any material facts bearing upon the issues to be determined. Hopf v. State, 72 Tex. 281, 10 S. W. 589. There was no error in overruling the exceptions.

The contestants also pleaded that J. S. Perdue, the proponent, had during the lifetime of T. J. Crawford received full satisfaction for the testator for the bequest made in his favor, and therefore had no further interest in the will and was not authorized under the law to probate it. That ground of contest was excepted to because of its legal insufficiency, and the overruling of that exception is the basis of another assignment of error. Assuming that the court did err in refusing to sustain that exception, in view of the disposition which we think should be made of the case upon other findings of the jury, that ruling should not cause a reversal of the judgment.

[4-6] On the trial in the district court the proponent, in making out his case, did not introduce F. A. Crawford as a witness, or use that portion of Crawford's testimony taken in the county court wherein the witness detailed the facts relating to the destruction of the will. Proponent did, however, offer in evidence and use a portion of Crawford's testimony taken in the county court which tended to show that in the opinion of the witness his brother T. J. Crawford was at the time of the destruction of the will insane. Both before and after this latter testimony was introduced by the proponent the contestants were permitted, over his objection, to read from the record of the evidence taken in the county court that portion of the testimony of F. A. Crawford wherein the witness described the destruction of the will by T. J. Crawford, the substance of which has already been quoted. The objection urged was that, this being a suit between the heirs of T. J. Crawford and an executor of his will, and the witness being an interested party, he was disqualified under article 3690 of the Revised Civil Statutes to testify at the instance of the contestants "as to any transaction with, or statement by," the testator. The appellants justified the introduction of that testimony upon two grounds: (1) They say that the nature of this suit and the facts detailed by the witness do not come within the provisions of the statute referred to; and (2) that the witness had been called to testify to those facts in the county court by the appellant, and that either party had a right to avail himself of that testimony on appeal to the district court. That a contested application to probate a will is a suit within the meaning of article 3690, which prohibits an interested party from testifying as to any transactions with or statements by the testator, intestate, or ward, unless called thereto by the opposite party, seems to be well settled. Lewis v. Aylott, 45 Tex. 190; Clark v. Briley, 193 S. W. 421; Ross v. Kell, 159 S. W. 119; Leahy v. Timon, 204 S. W. 1029. The probate of this will is resisted upon the ground that it was revoked by the testator, and the transaction relied upon to show a revocation is the foundation of the defense urged by the contestants. It is true that this witness had not joined in the written contest seeking to

defeat the probate of this will, but he was none the less an interested party. If the probate of the will should be defeated, he would gain an inheritable interest in the estate of his deceased brother, and, if the contest failed, he would lose that interest. The fact that he did not actively participate in the contest by joining in the pleadings did not prevent any judgment that might be rendered from concluding his rights to the same extent it did those who were actual parties to the pleadings. Clark v. Briley, 193 S. W. 421. The objection of the appellant applied not only to that portion of the testimony wherein the witness Crawford narrated the statements made to him by the testator, and transactions in which the witness participated, but to that which described the conduct of the testator in destroying the will. If any portion of this testimony was free from the objection made, the ruling of the court was correct.

The possibility of separating, without affecting its probative value, that portion of the testimony objected to, wherein the witness described the acts of the testator in tearing the will into fragments, from those portions wherein he repeated declarations made by the testator to the witness, and transactions in which both took part, has suggested that the objection was probably too comprehensive to be sustained. The important fact which the contestants were undertaking to prove was that the testator had deliberately destroyed his will. It was immaterial how he secured possession of the instrument, if he afterwards disposed of it in a manner legally sufficient to constitute a revocation. The question then arises: If he performed the act relied upon unaided by the witness or any third party, is that act a transaction concerning which an interested party to the suit may not testify? The statute uses the language "transaction with," implying that it must be one in which another party also participates. From this it might be inferred that, if the testator, while alone, performed the act of destruction, an interested party who witnessed that conduct would not come within the disqualification prescribed. In the case of Parks v. Caudle, 58 Tex. 216, the Supreme Court held that the terms of the statute were not limited to transactions between the deceased and the witness, but included those between the deceased and third parties as well. In that opinion the court uses language which is broad enough to imply a ruling that the statute includes unilateral as well as bilateral transactions participated in by the deceased. An examination of the facts of that case, however, will show that the transaction to which the objectionable testimony related was the execution and delivery of a deed by the deceased to a grantee under whom some of the parties to that suit claimed title. In a later case, that of Martin v.

McAdams, 87 Tex. 225, 27 S. W. 255, the Supreme Court held that the daughter of a deceased testator could testify that the signature of her father to a will under which she claimed was genuine. In the course of the opinion Justice Gaines uses this significant language:

"The making of a will is a transaction, but it is not a transaction of the testator with the devisees or legatees. The only participants in it are the testator and those whom he may call upon to witness that it is his last will and testament. The devisees may have nothing to do with it, and may, in fact, be ignorant of its existence, until after the death of the testator."

[7] This language justifies the conclusion that, if the transaction is one which did not occur between the deceased and the witness, nor with one under whom the witness claimed the rights in controversy, the statute does not apply. But in this case it appears to the writer that F. A. Crawford, the witness, was so intimately connected with the transaction of destroying the will that there can be little room for doubting his disqualification unless called by the opposite party. According to the testimony of this witness, the testator directed him to get the will and deliver it to the testator, and this was done; that after tearing the will in two the testator told the witness to light a match, and then held the papers over the flame in the hands of the witness until they were consumed. It is true that the fact of destruction was the subject of the inquiry; and, had it been completely performed by the testator when alone or unaided by any one else, there might be a reason for saying that any observer, whether interested or not, would be competent to testify concerning the deed. But that was not the case in this instance.

The next question is: Was Crawford called by the appellant? Articles 3271 and 3272 prescribe the facts which must be proved in order to probate a will. The three succeeding articles are as follows:

"Art. 3273. All testimony taken in open court upon the hearing of an application to probate a will shall be committed to writing at the time it is taken, and subscribed in open court by the witness or witnesses, and filed by the clerk.

"Art. 3274. Upon the hearing of an application for the probate of a will, if the court be satisfied from the evidence that such will should be admitted to probate, an order to that effect shall be entered upon the minutes; and such will, together with the application for the probate thereof, and all the testimony in the case, shall be recorded in the minutes; provided, that the substance only of depositions shall be so recorded.

"Art. 3275. A certified copy of such record of testimony may be read in evidence on the trial of the same matter in any other court when taken there by appeal or otherwise."

[8, 9] It is evident that these provisions for the perpetuation of the evidence upon

which wills are admitted to probate are designed for some useful purpose more general than the mere convenience of the party at whose instance particular testimony may be elicited in the county court. Wills may be, and often are, important muniments of title by which valuable real estate is held. The proceedings by which they are proved for record and established as muniments of title are actions in rem, and judgments rendered therein are binding upon every one. In view of the important property rights that may be concluded in actions conducted without service of actual notice upon those who may be interested in the subject-matter, article 5099 of the Revised Civil Statutes permits the institution of suits to set aside judgments probating wills at any time within four years after their rendition. Doubtless one purpose of the Legislature in requiring the testimony in original applications to probate wills to be reduced to writing and incorporated in the minutes of the probate court was to preserve a record of evidence available for use in future efforts to set those judgments aside, as well as on appeals to the district court. The appellant in this case had the option in the trial in the county court to use or not use F. A. Crawford as a witness for the purpose of proving the destruction of the will and the circumstances under which it occurred. Having called Crawford in the county court, appellant made him a competent witness by which to prove the transactions and the declarations elicited. This competency was not lost by the appeal to the district court. After the introduction of that evidence and its incorporation in the record, article 3275 of the statute authorized its use by the other parties in that appeal. We therefore conclude that there was no error in overruling the objection of the appellant to the introduction of that testimony.

The appellant introduced in evidence in the trial of the district court the following excerpt from the record of the testimony of the witness F. A. Crawford:

"During the 23 days that he was at my house he did not sit up a minute. During that 23 days I think he was crazy, and don't think that he had any mind. He used a cot and the bed also. Every few minutes he would want to move from one to the other. When he would get on the cot he would go to moving inch by inch as if he was trying to get off of it. And every hour, not longer than that, he was wanting to get up, saying that his bowels was going to move. A half dozen times or more they would move when he didn't know anything about it. I would have to wash him. Frequently he would take what he would call cramps, and you would have to rub him; his feet and legs, and sometimes his hands. Every day and every night on that. Just as bad of a night as it was in the daytime. It was necessary for me or some one else to sit up by his bed to keep him from falling off his bed. From that day to the day of my brother's death he was insane. He was not at himself at the time that he tore up the will. He was crazy at the time that he gave me that check, and didn't know what he was doing. I thought the check, however, was good. My brother was crazy, but I thought the check would be all right. I had no scruples about cashing the check for the purpose of paying what he owed. I thought he was crazy when he tore up the will. The $150 and note for $100 was given to Mr. Perdue in order to get the will and the adoption papers, and to pay him for his trouble in caring for my brother."

[10] Thereafter the contestants were permitted, over his objection, to introduce witnesses who testified that Crawford had expressed on other occasions the opinion that the deceased was of sound mind when he destroyed the will. All of this testimony was objected to upon the ground that it was immaterial and irrelevant, and that the contestants, having made F. A. Crawford their witness, could not in that manner impeach him. The testimony which the contestants produced tended to contradict the excerpt from the testimony of the witness Crawford which has been previously quoted, wherein he expressed the opinion that the testator was insane at the time he destroyed the will. That testimony was elicited by the appellant. It was admitted as original evidence in his interest, and was therefore, when used for the purpose of proving those facts, the witness of the appellant. It may be that this impeaching testimony should have been excluded upon the ground that a proper predicate had not been laid, but no such objection was urged in the trial below, and is not available here. Railway Co. v. Jackson, 93 Tex. 266, 54 S. W. 1023.

There are other assignments of error, which we deem it unnecessary to discuss in detail. All of them have been examined and considered, and in our opinion are without merit.

The judgment of the district court will therefore be affirmed.