## O'BRIEN v. FIRST STATE BANK & TRUST CO. OF TAYLOR.   (No. 6734.)

(Court of Civil Appeals of Texas.   San Antonio.   April 26, 1922.   Rehearing Denied May 31, 1922.)

1. Appeal and error ⚖⇒757(2), 758(2)—Exceptions to pleadings not properly set out in brief not considered.

Where error was based on the action of the court in sustaining exceptions and striking out certain allegations in plaintiff's petition, but neither the exceptions nor the pleadings stricken out were set out in appellant's brief, in which the only reference to the exceptions and the stricken pleading was that the portion of the pleading affected by the. ruling and not read to the jury will be indicated in pencil marks in the transcript, the statement was

insufficient, and the assignment cannot be considered.

2. Appeal and error ⚖⇒742(1)—Assignment of error not followed in brief by legal propositions insufficient.

Assignments of error not followed in the brief by legal propositions are insufficient, and are disregarded on appeal.

3. Appeal and error ⚖⇒1040(7)—Where evidence was admissible under remaining pleadings, sustaining exception to pleading harmless error.

Where evidence admissible under a stricken pleading was admissible under the remaining pleadings, any error in sustaining exceptions to the pleading stricken out was harmless.

4. Witnesses ⚖⇒182—Witness held to be interested party, and not competent to testify as to decedent's transactions in action against estate.

In an action against a decedent's estate, evidence of an attempted transfer of her interest in the estate by one of the heirs at law *held* to support the conclusion that the witness was an interested party, and therefore incompetent under Vernon's Sayles' Ann. Civ. St. 1914, art. 3690, to testify as to transactions with or statements by the decedent.

5. Trial ⚖⇒140(1)—Witnesses ⚖⇒79(3)—Competency of witness for court, but credibility for jury.

The competency of a witness is always a question for the court as his credibility is for the jury.

6. Appeal and error ⚖⇒992—Court's conclusion as to competency not questioned on appeal.

The conclusion of the trial court as to the competency of a witness, although involving a question of fact, cannot be questioned on appeal.

7. Banks and banking ⚖⇒116(6)—Bank held not chargeable with notice of defects in paper discounted by reason of president's knowledge.

An officer of a bank may transact his private business at such bank, and may discount third persons' notes, but in so transacting his private business his interest is adverse to that of the bank, and the moment the conflict arises he automatically ceases to represent the bank, and assumes his status as an individual; hence, where the president of a bank obtained notes from his mother-in-law (now deceased) through false representations, or by collateral promises or agreements, and passed them into the bank for value, and converted the proceeds, he did so as an individual, and the bank was not charged with notice of those vices in the paper by reason of his knowledge.

Appeal from District Court, Williamson County; Ireland Graves, Judge.

Action by the First State Bank & Trust Company of Taylor against George C. O'Brien, administrator of the estate of Mary

E. Henderson, deceased. From judgment for plaintiff, defendant appeals. Affirmed.

See, also, 239 S. W. 715.

Wilcox & Graves, of Georgetown, and Geo. C. O'Brien, of Beaumont, for appellant.

Critz & Lawhon, of Taylor, J. A. McNair, of Houston, and White, Cartledge & Wilcox, of Austin, for appellee.

SMITH, J. The First State Bank & Trust Company of Taylor sued Geo. C. O'Brien, as administrator of the estate of Mary E. Henderson, deceased, to recover upon six promissory notes, amounting to $24,064.65, which were admittedly executed by Mrs. Henderson during her lifetime, and payable to and held by the bank. The administrator contested the suit upon the grounds that the notes were executed without consideration, as an accommodation to the bank, in response to and because of certain fraudulent representations, promises, and agreements made to Mrs. Henderson by the president of the bank, Robert J. Eckhardt, who was the son-in-law of Mrs. Henderson. The bank recovered upon a directed verdict, and the administrator has appealed, his appeal being predicated upon 34 assignments of error, of which the second, twentieth, twenty-first, twenty-second, twenty-fifth, twenty-seventh, and twenty-eighth are waived because not brought forward and briefed.

[1] The third, fourth, fifth, sixth, seventh, and eighth assignments are based upon the complaint of appellant of the action of the trial court in sustaining appellee's exceptions and striking out certain allegations in appellant's trial petition. Neither the exceptions nor the pleadings stricken out in response thereto are set out in appellant's brief, in which the only reference to the exceptions and the stricken pleadings is that—

"The portions of the pleadings affected by the court's ruling and not read to the jury will be indicated in pencil marks in the transcript and the part marked [thus] was by the court excluded."

Obviously, this statement is wholly insufficient, and the assignment cannot be considered. The pleadings of the parties cover 51 pages in the record, of which appellant's trial answer constitutes 26 pages. This court is under no possible duty to search such record for clauses embraced in the brackets [—], for the purpose of locating the excluded pleadings, and, after locating the marked clauses, classify them, and, after classifying them, determine which assignment of error is directed at each particular one. The same symbol is used for the purpose of segregating clauses in the pleadings which relate to other assignments than those mentioned, which adds to the confusion, and renders it impossible, even if it were our duty, to adjust the assignments and the statements thereunder.

[2] The thirteenth and fourteenth assignments are also objectionable, but for other reasons. Those assignments, which are grouped, are not propositions within themselves. They are not followed by propositions of law, as required by the old rules, to follow which is the simplest matter in the world, and to comply with which would have been considered sufficient by this court, without reference to any new rules. Nor are the new rules complied with by the submission in the first part of appellant's brief, or elsewhere, of propositions of law based on the assignments mentioned. An obvious attempt is made to comply with the new rules, but the only result was a simpler and more general specification of the same error complained of in the assignment, which was that the court erred in excluding certain testimony, the substance of which is set out in both the assignment and proposition relating thereto. While the ruling complained of is clearly specified, no proposition of law is set forth relating to the assignment, no reason is given why, or in what respect, or for what purpose, the ruling was error, or what principle of law was, in appellant's mind, contravened by the ruling. In other words, the brief contains the simple complaint that the court erred in excluding certain testimony, which is set out, but there appellant's complaint ends. That is not sufficient, and the assignments will be disregarded.

[3] In his first assignment of error appellant complains of the action of the court below in sustaining an exception to the clause in the defendant's answer that "stated and declared to the said plaintiff's agent at such time that she was not bound by said notes, having received no consideration therefor, and the same having been given to said bank for its accommodation only, but that the plaintiff, its officer and agent, at such time represented to this decedent, and admitted to her, that she was not bound by said antecedent notes, but that the same were given without consideration, and for the accommodation of said bank alone." The statement under this assignment does not set out, in substance or otherwise, the exception which was directed at this pleading, and which was sustained, and no record reference is given us by appellant by which we may locate that exception. We gather from appellee's brief, however, that the substance of the exception was that the stricken pleading sought to plead evidence, rather than facts. Appellant, in his propositions and argument under this assignment, contends that the pleading was proper as bearing upon his contention that the notes involved were executed as an accommodation, and were without consideration. We are inclined to the opinion that the exception was good, but, in any event, it is apparent that the ruling complained of, if error, was harmless, since under other allegations in the petition all ev-

idence admissible under the stricken pleading was admissible under the remaining pleadings. This assignment is overruled.

[4] The main question in the case is raised by appellant in his eleventh assignment of error. Mrs. Vivian Henderson Umberger, who was the daughter of Mrs. M. E. Henderson, deceased, against whose estate the suit was brought, was put on the witness stand by appellant for the purpose of testifying to certain transactions and conversations alleged to have occurred between Mrs. Henderson and her son-in-law, R. J. Eckhardt, the then president of appellee bank, which transactions and conversations occurred prior to Mrs. Henderson's death, of course. The court excluded this testimony upon the objection of the bank that it would be in contravention of article 3690 of the statutes, which provides that:

"In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent." Vernon's Sayles' St.

It appears that Mrs. Umberger was one of 11 children surviving Mrs. Henderson, who died intestate, leaving a substantial estate which would descend in equal shares to her children under the law. Mrs. Umberger, being an heir at law of her mother, was constructively a party to the suit (Perdue v. Perdue [Tex. Civ. App.] 208 S. W. 353; Clark v. Briley [Tex. Civ. App.] 193 S. W. 421), and accordingly was prima facie incompetent to testify to conversations and transactions between her mother and third persons. Parks v. Caudle, 58 Tex. 216.

It also appears from the record that during the pendency of this suit, and before the trial thereof, Mrs. Umberger executed to one of her sisters a conveyance of her interest in the estate of her deceased mother for a recited consideration of $2,500, and appellant contends that by reason of this conveyance, Mrs. Umberger was rendered competent to testify to the conversations and transactions of her mother. In the absence of the jury Mrs. Umberger was examined at some length in regard to the conveyance to her sister for the purpose of determining the good faith of the transaction, and it was after hearing this evidence that the court excluded the testimony of the witness as to the statements and transactions of her mother. It appears from Mrs. Umberger's testimony that her sister, Mrs. Adams, consulted her about the purchase of her interest in the estate about the time of their mother's death, but no agreement was reached then or thereafter about the sale and purchase. No negotiations between the two were had leading up to the conveyance; no price was ever suggested or agreed upon between them. Mrs. Umberger went to the office of a Mr. Bland and signed the deed, which she had not theretofore seen, and the nature of which is not shown by the record here, whether a quitclaim, general warranty, or otherwise. When she first saw the deed it was in the hands of one of her brothers, and after executing it she left it with Bland and did not know how it got to Mrs. Adams, the grantee, who was not present at the time the instrument was executed. The administrator appellant O'Brien, was present, and for some reason admonished Mrs. Umberger that the sale and conveyance must be made in good faith. She did not receive anything at the time for executing the deed, but several days later she received a deposit slip for $2,500 on a bank at Port Arthur. Shortly after this she married and moved to Virginia, where she was living at the time of the trial. She has never checked against the deposit, and does not know if the money is still in the bank or not, or whether any of it has been used for her benefit, although she had authorized part of it to be used in paying doctor's bills and expenses incurred by her in a recent illness. At the close of this testimony, of which the foregoing is only a general outline, the trial court sustained appellee's objection to the witness testifying to transactions with and statements by her mother, and the court appended this qualification to the bill of exception showing this transaction:

"While not fully satisfied on the issue of good faith of the alleged alienation of the interest of the witness in the estate, the opinion was strongly entertained by the court that the alleged conveyance by witness of her interest in the estate was not a bona fide transaction, but was a pretended one, executed for the purpose of enabling her to testify in certain particulars. This was a conclusion reached after hearing her testimony, in the absence of the jury, with respect to the deed to her sister, and the circumstances connected therewith. This qualification is not intended as a comment on the weight or credibility of any testimony of this witness which was offered and submitted before the jury."

[5, 6] We think the court was acting within its discretion in excluding the testimony of Mrs. Umberger. The competency of a witness is always a question for the court, as his credibility is always a question for the jury. Jones v. McCoy, 3 Tex. 349. Of course, if it had been made to appear that there was no evidence of the interest of the witness, or if the undisputed testimony had conclusively shown the witness to be without interest in the suit, then the action of the court in holding the witness to be incompetent would constitute an abuse of discretion, and would be subject to revision here. But

this is not the case presented. We think the evidence was of such nature as to support the court's conclusion that the witness was an interested party, and therefore incompetent, and, this being true, that conclusion, although involving a question of fact, cannot be questioned here, any more than could the finding of a jury upon a disputed issue of fact. Garner v. Cutler, 28 Tex. 175.

If permitted to do so, Mrs. Umberger would have testified in effect that in March, 1919, R. J. Eckhardt, then president of appellee bank, and son-in-law of Mrs. Henderson, called on the latter, in her home and, in the presence of the witness, requested Mrs. Henderson to execute the notes here sued on, in renewal of existing notes, saying that the State Banking Department had asked him to get·said notes renewed; that if she refused to renew the notes it would be his "ruination, for the banking department is trying its best to send me to the penitentiary; you will not be required to pay these notes, and to satisfy you of that fact I am worth $300,000 or $400,000 net above my debts, and I will give you my notes payable for the same amount as are set forth in these notes from you to the bank. You need not worry about it at all, for by the time they come due everything will be all right. The bank is greatly in need of funds, and if you will make these notes they can be used for borrowing money from the Chase National Bank and other banks with which to help the First State Bank & Trust Company, and keep it from having to close its doors." Mrs. Umberger would have further testified that her mother then said to Eckhardt: "This has nearly worried me crazy. Well, Bob, upon condition that the bank will protect me, and I shall not have them to pay, I will sign them. In order to help the bank all I could last January, I gave a mortgage on my farm in order to get the money with which to pay it all I owed it, and now I am asked to do this"—and thereupon signed the renewal notes. Eckhardt then executed and delivered his individual notes to Mrs. Henderson in like amounts and terms, remarking that the bank examiner had been raising sand about these notes, and that "of course I could not let them know they were really not" Mrs. Henderson's notes. Mrs. Umberger would have further testified that a few days later Mrs. Henderson asked Eckhardt if he could not give her some security for the notes, to which he replied:

"Mother, I would be glad to give you security, but the papers would have to be recorded at Georgetown, where it would stand there as an open acknowledgment to the banking department that the notes given by you to the bank are not yours, and I can't do that at this time."

The foregoing constitutes the gist of the testimony of Mrs. Umberger, which was stricken out upon the objection that because of her interest the witness was incompetent to testify to the conversation between her deceased mother and Eckhardt. The point is made by appellee that, even if this·testimony had been admitted, it would not suffice to support appellant's defense that the notes in question were executed by Mrs. Henderson without consideration, and as an accommodation to the bank. We think this contention of appellee is correct. In the first place, it is conceded that the notes sued on were executed by Mrs. Henderson as renewals, and in lieu of notes for like amounts previously executed by her, which were in turn renewals of her antecedent notes. There is, then, no question about the execution of the obligations, and it is conceded that they were payable to and held by the bank, and their execution and delivery to the bank import, and they in terms recite, that they were executed for value received by the maker. Moreover, as we understand the record, it is conclusively shown by the undisputed evidence that Mrs. Henderson, or those acting for her and with her authority, received the proceeds of the notes at the time the original obligations were executed by her. The unchallenged records of the bank clearly showed each transaction to have been regular upon its face, that appropriate debits and credits were made in the books, and that the amounts of the notes were credited upon Mrs. Henderson's account, and were withdrawn upon checks executed by her or by her undisputed authority. In this situation, then, it matters but little what representations Eckhardt made to Mrs. Henderson in order to induce her to renew these obligations. These obligations were due, she was confronted with the duty of paying or renewing them, and the sophisticated assurances or desperate appeals of Eckhardt could not lessen her liability to the obligee. For these reasons the alleged conversations and transactions between Eckhardt·and Mrs. Henderson, as embraced in the excluded testimony of Mrs. Umberger, became immaterial. If this conversation were bolstered up with all the inferences that could possibly be drawn therefrom, and from all the other evidence in the case, both excluded and admitted, the most that could be derived from it is the surmise that Eckhardt had at some time, and for his own private ends, led Mrs. Henderson to believe that her notes were being held by the bank merely in aid of its credit, and not as assets of the bank. But that very surmise is destroyed in the excluded conversation, from which it appears that the bank was carrying the notes, not as accommodation paper, but as active assets, on which hypothesis the state banking authorities were demanding the renewal of the paper. And, according to the excluded conversation, the notes were renewed for the very purpose of keeping alive these assets, thus satisfying the banking commissioner, who from his ex-

amination of the bank's affairs had ascertained that the notes were held by the bank among its assets, and not as accommodation paper. It was with this information before her that Mrs. Henderson executed the notes sued on. If Eckhardt had theretofore misled or overreached her with reference to the status of her notes, and her liability thereon, she was fully disillusioned in this conversation, if the excluded testimony of Mrs. Umberger is to be credited. If Eckhardt was in danger of being sent to the penitentiary on account of these obligations of Mrs. Henderson, as contended for in Mrs. Umberger's testimony, then, it must be inferred from the same testimony that he placed himself in this jeopardy by taking the obligations as accommodation paper, and passing them into the active assets of the bank, obtaining the proceeds therefrom, and converting them to his own use, as is intimated by appellant.

[7] But, if this inference were established as a fact, Mrs. Henderson, but not the bank, would be bound thereby. An officer of a bank may properly transact his private business at such bank. He may discount third persons' notes at such bank, even. But in so transacting his private business his interest is adverse to that of the bank, and the moment the conflict arises he automatically ceases to represent the bank, and assumes his status as an individual. So, if Eckhardt in the pursuit of his private purposes obtained Mrs. Henderson's notes through false representations, or by collateral promises or agreements, passed them into the bank for value, and converted the proceeds, he did so as an individual, and, although he was president of that institution, the bank was not charged with notice of those vices in the paper by reason of his knowledge. 3 R. C. L. 478; Mays v. Bank, 233 S. W. 326; Bank v. Harrell (Tex. Civ. App.) 159 S. W. 858. The circumstances under which the original notes, and intermediate renewals, were executed, are not shown, but, if Mrs. Umberger's testimony, whether excluded or admitted, is to be relied on, as appellant insists, it shows that Eckhardt took the notes to Mrs. Henderson's residence, and there transacted the business of procuring her to execute them, and, whatever may be said of all previous transactions, he then and there put her upon notice that his interest in the matter was adverse to that of the bank—that the notes were being carried as assets of the bank, and not as accommodation paper—and, in the presence of this full notice, she executed the notes for the purpose of maintaining her active and direct liability to the bank, and her representatives are now estopped from denying that liability. It cannot be denied that Mrs. Henderson had notice of Eckhardt's appropriation of her funds, if he did appropriate them, through her knowledge that the notes were being carried among the actual assets of the bank. The original notes, of which the notes sued on were final renewals, seem to have been executed from two or three years prior to the transactions here involved, and, if there was any misappropriation, it must have occurred at the time the original notes were given. If the proceeds of the notes were withheld from Mrs. Henderson by Eckhardt, it was done through the power she placed in his hands. He was her son-in-law; she was dealing with him, part of the time under a full power of attorney to him, and if she was accommodating any one it was her son-in-law, and not the bank. The conversation delineated in Mrs. Umberger's excluded testimony shows this. If true, it shows that Eckhardt's chief concern was about the penitentiary, and that his appeals touched the heart, not of Mrs. Henderson, the woman of business, but of Mrs. Henderson, the mother of his wife. It presents anew the age-old story of mother love, which, though often abused, often crucified, never falters in its sacrificial course, and still survives to bless the world. It runs as a golden thread through all the transactions involved in this litigation, regardless of the specific finding of court or jury upon any particular fact. And if out of her modest fortune there is but little left for her children, she has nevertheless left to them the more princely heritage of a gracious and goodly life, full of generous affection, kindness, and sacrifice.

In his thirty-first assignment of error appellant contends that he was entitled to participate in the distribution of funds derived from the sale of certain properties which Eckhardt had conveyed in trust to the bank to secure it against losses occasioned by the latter's alleged misconduct of the affairs of the bank while he was its president. The printed form of the deeds of trust by which this conveyance was made contained a stipulation that the funds derived from the sale of the properties should be distributed pro rata among the bank's creditors. But in a supplemental agreement made between the parties it was expressly provided that these funds when collected should be applied as the bank should see fit. The record conclusively shows that this latter provision was intended by the parties to supersede the first provision, and the exercise of this option cannot be questioned by appellant. This assignment will be overruled.

In what we have said it is intended to hold, in considering appellant's eleventh assignment of error, which is overruled; (a) That Mrs. Umberger was constructively a party to this suit, and under article 3690 prima facie incompetent to testify to conversations and transactions of her mother, now deceased; (b) that her testimony on her voir dire examination raised the issue as to whether or not she had in good faith hypothecated her interest in the estate, thus re-

moving the bar from her disability, and that the court's determination of that issue was binding on this court, and her testimony properly excluded; (c) that, even if her testimony had been admitted, it was not sufficient to support the defense that the notes involved were executed by Mrs. Henderson without consideration and as an accommodation to the bank; (d) that the record conclusively negatives such defense, and that appellee was entitled to recover as a matter of law upon the undisputed testimony. These findings, and the reasons given for these holdings, apply to the questions raised in all the other assignments, which are accordingly overruled.

The judgment is affirmed.

On Motion for Rehearing.

Appellant complains because of the failure of this court to pass upon his twelfth, fourteenth, fifteenth, sixteenth, twenty-sixth, twenty-ninth, thirtieth, thirty-second, thirty-third, and 33A assignments of error. The twelfth assignment is overruled for the reasons, among others not necessary to here enter into, given in the original opinion for overruling the eleventh assignment. Under the fourteenth, fifteenth and sixteenth assignments complaint is made of the exclusion of the testimony of Mrs. Umberger to the effect that Mrs. Henderson received no money for a certain $5,000 note executed to the bank. As this note was a renewal of an existing note for a like amount the excluded testimony was immaterial, and the assignments are overruled. In the twenty-sixth, twenty-ninth thirty-first, thirty-second, thirty-third, and 33A assignments complaint is made of the peremptory instruction against appellant. These assignments are overruled, for the reasons given for overruling the eleventh assignment. Complaint is made that a certain check which was shown to be three years old was charged against Mrs. Henderson's account at the bank. The check purported to be dated January 24, 1914, and was charged on the account on January 24, 1917. The undisputed evidence conclusively shows that the true date of the check was as of the latter date, and that its purported date was necessarily error. This assignment is overruled.

The motion for rehearing is overruled.